O'NEIL ENGINEERING CO. et al. v. CITY OF SAN AUGUSTINE et al. (No. 6647.)

(Court of Civil Appeals of Texas. Galveston. Nov. 10, 1914. Rehearing Denied Dec. 17, 1914.)

1. APPEAL AND ERROR (§ 548*)—INSTRUCTIONS —BILL OF EXCEPTIONS—NECESSITY.

Error cannot be assigned on the charge of the court or on the refusal of requested charges, unless a proper bill of exceptions has been taken in the trial court to the portion of the charge complained of or to the court's action in refusing requested charges.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2433–2440; Dec. Dig. § 548.*]

2. CONTRACTS (§ 280*)—ENGINEERING SERVICE—PERFORMANCE—NEGLIGENCE.

Where a contract employing engineers to construct a waterworks plant provided not only that the company should furnish plans and specifications for the work and a competent superintendent, but gave it entire control and management of the work in constructing the system and the employment and control of the necessary labor, it was bound to exercise reasonable care in employing a competent superin-

tendent and labor, and was liable to the city for any damage occasioned by a failure to do so.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1249–1280; Dec. Dig. § 280.*]

3. PRINCIPAL AND SURETY (§ 82*) — BOND — PERFORMANCE OF WORK.

Where a contract employing engineers for the construction of a waterworks system not only required them to prepare proper plans and specifications, but gave them complete charge of the work of construction, the surety on a bond conditioned that the engineering company should faithfully comply with and fulfill all the terms and conditions of the contract was liable for loss to the city incident to the engineering company's negligence in failing to provide a proper superintendent and labor in the construction of the work.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 127; Dec. Dig. § 82.*]

Appeal from District Court, San Augustine County; A. E. Davis, Judge.

Action by the City of San Augustine and others against the O'Neil Engineering Company and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Harry P. Lawther, of Dallas, for appellants. Foster & Davis, of San Augustine, for appellees.

PLEASANTS, C. J. In December, 1908, appellee, as party of the first part, entered into a contract with appellant engineering company, the material parts of which are as follows:

"That the said party of the first part has this day employed the party of the second part as supervising and constructing engineers to prepare plans and specifications for the construction of a system of waterworks, to be erected and constructed in the city of San Augustine, San Augustine county, Tex., upon the following terms and conditions:

"First. The said party of the second part shall prepare and finish complete plans and specifications for the construction and equipment of the proposed waterworks system, together with an estimate of same, which said estimate shall be guaranteed by a surety bond, and shall submit same to the party of the first part for their approval, and shall make such changes in plans as shall be desired by the party of the first part.

"Second. When such plans and specifications shall be approved and accepted by the party of the first part, said party of the second part shall cause advertisements for bids of all of the material, machinery, and apparatus needed in the construction of said work to be inserted in the Manufacturers' Record of Baltimore and the Engineering News of New York, to be at the expense of the party of the first part and to run not less than two weeks, said bids called for in said advertisements shall be addressed to the party of the first part, and shall not be opened until the day named in said advertisements, at which time, or if deferred by the party of the first part to a later date, said party of the second part by its officers, shall be present to assist the party of the first part in awarding contracts for the purchase of machinery, material, and apparatus needed in the construction of said waterworks system.

"Third. The party of the second part shall employ all labor that may be necessary in collecting material and constructing said plant, and in doing so shall use local labor so far as

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

possible, said labor to be paid for by the party of the first part, and shall also furnish a competent superintendent of same and of the work to be done in the construction of said waterworks system, which shall include a competent superintendent, and such other superintendence as may be necessary at the expense of the party of the second part, and shall also at its expense furnish all tools necessary for the construction of said work, such as picks, shovels, plows, scrapers, lanterns, hammers, and such like articles."

As compensation for its services under said contract, the appellant engineering company was to receive "10 per cent. of the entire cost of the material, labor, machinery, apparatus, and all other things going into the cost of the construction of said work," payable in installments; the times and amounts of such payments being specified in the contract. It was further provided in said contract that no liability should be incurred thereunder until the city could dispose of bonds to be issued for the purpose of constructing said system.

Acting under this contract, the engineering company, in February, 1909, prepared plans and specifications and an estimate of the costs of the system, and submitted same to appellee. These specifications called for one artesian well 500 feet in depth, estimated to cost $1,500. Owing to the delay in the issuance and sale of the bonds of the city, nothing further was done under this contract until 1911, when, after certain changes in the specifications, bids were advertised for all of the material and machinery, as provided in the contract. As finally adopted, the estimated cost of the system, exclusive of the commission to be paid the engineering company, was $20,434.37. The final specifications and estimate call for a well 500 feet in depth, to cost $1,500. The advertisement for bids made by the engineering company did not include a bid for the well; but a contract was made by the city, without consulting appellant, with a well borer by which he agreed to sink a 6-inch well for $2 per foot, the city to furnish the casing and the derrick to be used in the work, and also to pay the freight on the shipment of the well-boring machinery from Homer, La., to San Augustine. After the contract for the material and machinery and for the well had been let, the engineering company executed and delivered to the appellee the following bond upon which the appellee Fidelity & Deposit Company of Maryland is surety:

"State of Texas, County of San Augustine.

"Know all men by these presents that we, O'Neil Engineering Company, as principal, and Fidelity & Deposit Company of Maryland, a corporation of the state of Maryland, of Baltimore, Md., as surety, are held and firmly bound unto the city of San Augustine, San Augustine county, Tex., in the sum of five thousand ($5,-000.00) dollars, lawful money of the United States of America, well and truly to be paid to the said city of San Augustine, Tex., for which payment well and truly to be made we bind ourselves, our heirs, executors, administrators, successors, and assigns, firmly by these presents.

"Signed and dated this 11th day of August, A. D. 1911.

"The condition of this obligation is such that, whereas the said O'Neil Engineering Company has entered into a certain written contract with the said city of San Augustine, Tex., bearing date the 17th day of December, A. D. 1908, covering the designing, supervising, and construction of a water system for the city of San Augustine, Tex., as per contract hereto attached and made to form a part hereof: Now, therefore, if the said O'Neil Engineering Company shall do and perform all things required of them by said contract, and shall in all things faithfully and honestly comply with and fulfill all the terms and conditions of said contract, then this obligation shall be null and void, otherwise it shall remain in full force and effect.

"It is specifically understood and agreed that the surety, Fidelity & Deposit Company of Maryland, does not guarantee the maintenance of any portion of the work after the completion of same, nor does this bond cover any provisions of the contract respecting guarantee of efficiency or wearing qualities or for maintenance or repairs.

"In testimony whereof, witness our hands the day and year first above written."

On April 26, 1912, after the completion of the waterworks system, the appellee brought this suit against appellants to recover damages for the alleged breach by the engineering company of its contract. The petition alleges the breach of the contract in the following particulars and sought to recover the items of damages specified:

(1) That the cost of the work exceeded the estimate in the sum of $1,117.07. (2) That under the terms of the contract the O'Neil Engineering Company was to furnish at its expense a competent superintendent of labor and work, and such other superintendence as might be necessary; that in the course of the work the said O'Neil Engineering Company had employed as foreman and representatives three several men, who had been paid in the aggregate the sum of $378.-40 by the city, instead of by the O'Neil Engineering Company, as provided for in the contract. (3) That the superintendent furnished by the engineering company was incompetent, and performed his duties in a negligent manner, and that by reason of the carelessness and negligence of said superintendent, who had authority from said defendant to employ and discharge the laborers necessary to perform the work of constructing said system, a large number of unnecessary laborers were employed to perform the work of ditching and laying the water pipes for said system; that said laborers were not required to do a full day's work, and that said superintendent who had charge of said work did not give his attention to the same, but devoted a large portion of his time to his private business affairs and permitted the men employed to do said work, and whose wages were paid by appellee, to waste their time; that said work was conducted by said superintendent with reckless extravagance and utter disregard of the rights of appellee; and that, as a direct result of the manner in which the work was

conducted in the digging of the ditches and laying the pipe, the cost of such work to appellee was $1,062.50 more than it would have been had said work been properly conducted. (4) That by reason of the incompetence and negligence of said superintendent in supervising the sinking of the well for said system the appellee was compelled to expend for said well $2,118.54 more than it would have cost him but for the incompetence and negligence of said superintendent.

The petition admitted that appellee owed the engineering company a balance of $545.70 as commission under its said contract, and prayed for judgment for the damages above stated, aggregating $4,676.45, less the said sum admitted to be due defendant.

In addition to a general demurrer, special exceptions, and general denial, the defendants further answered, specially denying that the cost of the plant had exceeded the estimate, that the plans and specifications of the O'Neil Engineering Company had only called for a well 500 feet deep 6 inches in diameter, estimated to cost $1,500, and that they could not be held responsible, and especially the surety company could not be held responsible, for any costs the city had been put to concerning said well after it passed a depth of 500 feet, that the three several men who had been paid by the city in the aggregate sum of $378.40 were not superintendents, but were simply straw bosses, and, under the terms of the contract, should have been paid by the city, as they were paid; specially denying that the said Greene performed his work in a negligent manner; and setting up that the amount paid out for the ditch pipe laying and reservoir work was much as was ordinary and customary under the circumstances; and setting up various items in the total cost of the work which they claimed were extras not called for in the original plans and specifications, and due to changes therein made by the direction of the city of San Augustine; and setting up that the city was still due the O'Neil Engineering Company a balance of $571.70 commissions provided for in the contract, for all of which they prayed judgment against the city.

The cause was submitted to a jury in the court below upon special issues. The charge of the court, in so far as it relates to the questions presented by appellant's assignments of error, was as follows:

"In this case the court submits to you for your finding certain questions, which you will answer in accordance with your findings. The burden of proof rests on the plaintiff the city of San Augustine to show by a preponderance of the evidence the allegations in its petition, and, if it has failed to do this, the city cannot recover. 'Negligence' is the want of that care and diligence which an ordinarily prudent person would use under the same or similar circumstances. 'Incompetency' is the want or lack of ability to do or perform a certain thing.

"In this case you are charged that, under the contract introduced in evidence between the plaintiff and O'Neil Engineering Company, dated December 17, 1908, it was the duty of the engineering company to furnish a competent superintendent for the construction of the waterworks system and to furnish such other superintendence as the work required, and it was the duty of the engineering company to exercise in the supervision of the work the care and skill of an ordinarily prudent supervising engineer under the same or similar circumstances, and, if the said company has failed to exercise such care and skill in the particulars alleged in plaintiff's petition, and the plaintiff has been damaged thereby, the engineering company would be liable therefor.

"Question No. 1: Was S. G. Greene negligent or incompetent in supervising the digging of the ditch and reservoirs and laying the pipe for the waterworks system? Answer this question 'Yes' or 'No.'

"If you answer question No. 1 'Yes,' then answer question No. 2; but if you answer question No. 1 'No,' then you need not answer question No. 2.

"Question No. 2: Was the city of San Augustine damaged because of the negligence or incompetency of S. G. Greene in supervising the digging of ditches and reservoirs and laying the pipe for the waterworks system for the city of San Augustine? Answer this question 'Yes' or 'No.'

"Question No. 3: Did S. G. Greene cause the well to be drilled below 500 feet? Answer this question 'Yes' or 'No.'

"If you answer question No. 3 'Yes,' then answer question No. 4; but if you answer question No. 3 'No,' then you need not answer question No. 4.

"Question No. 4: Was it negligence for Greene to cause the well to be drilled below 500 feet, under the circumstances? Answer this question 'Yes' or 'No.'

"If you answer questions Nos. 3 and 4 'Yes,' then you will answer question No. 5; but if you answer either questions No. 3 or No. 4 'No,' then you will not answer question No. 5.

"Question No. 5: Was the city of San Augustine damaged because of the negligence of S. G. Greene in causing the well to be drilled below 500 feet? Answer this question 'Yes' or 'No.'

"If you answer questions Nos. 3, 4, and 5 'Yes,' then you will answer question No. 6; but if you answer any of the questions Nos. 3, 4, and 5 'No,' then you need not answer question No. 6.

"Question No. 6: What was the amount of damages to the city of San Augustine because of the negligence or incompetency of S. G. Greene in causing the well to be drilled below 500 feet? Answer this question by giving the amount in figures.

"If you answer questions Nos. 1 and 2 'Yes,' then answer question No. 7, but if you answer either questions 1 or 2 'No,' you will not answer question No. 7.

"Question No. 7: What was the amount of the damages because of the negligence or incompetency of S. G. Greene in supervising the digging of the ditches and reservoir and laying the pipe for the waterworks system of the city of San Augustine? Answer this question by giving the amount in figures."

The jury by their verdict answered the first five questions in the affirmative, and, in answer to the sixth and seventh questions, fixed the amounts of appellee's damage at $994 and $800, respectively. In answer to the eleventh question propounded to them, they found that the total estimated cost of the waterworks system under the plans and specifications furnished by the engineering company was $20,500, exclusive of the commissions to the engineering company; and

in answer to the twelfth question found that the actual cost of the system to the city was $22,146.16. Upon the return of this verdict both parties asked for judgment thereon. The motion of defendants for judgment in their favor was refused and plaintiff's motion granted. The judgment rendered was in favor of plaintiff for the sum of $1,794, the aggregate amount of damages found by the jury in answer to questions 6 and 7, and the further sum of $378.40, the amount shown by the evidence to have been paid by plaintiff to the three foremen whose wages plaintiff claimed should have been paid by the engineering company. From these aggregate amounts, $2,172, the sum of $571.70, the amount found by the jury to be due the engineering company as commissions, together with $52.70 interest thereon, was deducted, leaving a judgment in favor of the plaintiff against both defendants for the sum of $1,543.97.

The sufficiency of the evidence to sustain the findings of the jury upon the issues submitted to them is not questioned by any of the assignments of error presented by appellants.

The first, second, third, and fifth assignments of error presented in appellants' brief are as follows:

"First assignment of error: The court erred in submitting to the jury the question of Greene's negligence, and in rendering judgment against appellants on account of same, especially as to the fidelity and deposit company. Neither the contract between the city of San Augustine and the O'Neil Engineering Company nor the bond of the fidelity and deposit company guaranteed the city against the negligence of the superintendent furnished by the engineering company.

"Second assignment of error: The court erred in submitting to the jury, especially as against the surety company, the question of the negligence of Greene in causing the well to be drilled below 500 feet, and in rendering judgment against appellants on account of same; the plans and specifications which were approved and accepted by the city only calling for a 6-inch well 500 feet in depth, at an estimated cost of $1,500.

"Third assignment of error: The court erred in refusing to give to the jury special issue No. 9, requested by the defendants as follows: 'Was Greene incompetent in the superintendence of the digging of the well down to a depth of 500 feet.' "

"Fifth assignment of error: The court erred in refusing to submit to the jury special issues Nos. 2 and 10, as follows:

"Special issue No. 2, requested by the defendants: 'At the request of the defendants, I submit to you for your finding the following question, in addition to the questions hereinbefore propounded to you, which you will answer in accordance with your finding: "Question No. 16: Did the city of San Augustine expect to obtain a flowing well at the depth and size which the defendant engineering company's estimate of the well named in the plans and specifications upon which the total cost was based?" '

"Special issue No. 10, requested by the defendants:

" 'In considering your answer to question No. 3, you will take into consideration all of the circumstances of the case, the fact, if you find from the evidence that such was the fact, that all of the parties expected to obtain a flowing well at a depth of 500 feet, the quantity of water which you find from the evidence was found at depth of 500 feet, and whether or not what is known as a flowing well was, in fact, found at a depth of 500 feet; and if, from all the circumstances surrounding the situation, and looking at it from Greene's viewpoint, you find from the evidence that a man of ordinary prudence and competence would have acted as Greene did, under the same or similar circumstances, you will answer this question, "No;" also, before determining your answer to this question, you will find from the evidence whether the water which was found which rose to the top of the pipe and trickled over was found at a depth of 500 feet or at a depth between 640 and 710 feet.' "

[1] It does not appear from the record that any bill of exceptions was taken by the defendants in the court below to the charge given by the court, nor to the refusal of the court to give the special charges requested by the defendants. It has I 'n held in a number of cases decided by the Courts of Civil Appeals for the Third, Fifth, Sixth, and Seventh Districts that under our present statute no complaint of error in the charge of the court or in the refusal of requested charges will be heard on appeal, unless a proper bill of exceptions is taken in the court below to the portion of the charge complained of, or to the action of the court in refusing requested charges when such action is assigned as error. Saunders v. Thut, 165 S. W. 554; Railway Co. v. Wadsack, 166 S. W. 42; Railway Co. v. Brown, 168 S. W. 867; Motor Co. v. Freeman, 168 S. W. 82; Railway Co. v. Barnes, 168 S. W. 992; Railway Co. v. Mallard, 168 S. W. 994. We think this is a fair and reasonable construction of the statute, and that such construction tends to further the evident purpose and object of the Legislature in its enactment.

In the recent cases of Railway Co. v. Churchill, 171 S. W. 517, and Conn v. Houston Oil Co., 171 S. W. 520, this court approved and followed the rule announced in the cases above cited.

[2] If, however, we could consider the assignments, we do not think they should be sustained. Under the contract before set out, the obligation of the engineering company was not limited to furnishing plans and specifications for the work and a competent superintendent thereof, but they had entire control and management of the work of constructing the system and the employment and control of the labor necessary for such construction. This responsibility having been assumed by it, and being a material part of the consideration for the execution of the contract by the city, the company was required to use ordinary care and diligence in the discharge of its contract obligations, and would be liable to the city for any damage caused by its failure to use ordinary care in the performance of any of its contract undertakings.

[3] The bond executed by the appellant

surety company was conditioned upon the faithful performance by the engineering company of all of the requirements, terms, and conditions of its contract with the city, and under this bond the surety company is liable for any damages sustained by the city by reason of the failure of the engineering company to faithfully comply with any of the requirements of the contract. We think the charge given by the trial court correctly applied the law to the facts disclosed by the evidence, and that the requested instructions were properly refused.

The fourth assignment complains of the refusal of the court to render judgment in favor of the defendants upon the findings of the jury that the total cost of the plant did not exceed the estimate furnished the city by the engineering company. This assignment is predicated upon the theory that the engineering company was not required under its contract to use any care in the employment of labor or in incurring expenses for the city further than to bring the total cost of the work within the amount of the estimate furnished by it. We do not think this is a proper construction of the contract. As we have before said, we think the company was bound under the contract to use ordinary care and diligence in the performance of its contract undertakings, and the fact that the city required it to guarantee that the work would not cost more than a stated amount did not authorize it to negligently spend an unnecessary amount in carrying out the contract, and thus increase the amount of its commissions.

This disposes of all of the assignments presented in appellants' brief, and from the conclusions above expressed it follows that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.