Ivan LANGFORD, Jr., Appellant,

v.

Karl E. KRAFT, Appellee.

DOWNING & WOOTEN ENTERPRISES, INC., Appellant,

v.

Karl E. KRAFT, Appellee.*

Nos. 7867, 7868.

Court of Civil Appeals of Texas, Beaumont.

June 23, 1977.

Rehearing Denied July 28, 1977.

C. Charles Dippel, Fred A. Collins, Houston, for appellants.

W. C. McClain, Conroe, Karl E. Kraft, Houston, for appellee.

KEITH, Justice.

In an earlier appeal from interlocutory orders we reviewed the nature of the dispute between the parties. See *Langford v. Kraft,* 498 S.W.2d 42 (Tex.Civ.App.—Beaumont 1973), to which we refer generally.[1]

---

* *Editor's Note:* The decision in *Benoit v. State* published in the advance sheets at this citation (551 S.W.2d 392) was withdrawn from the bound volume at the request of the Court.

1. In the former appeal, Langford appealed from an order overruling his plea of privilege to be sued in Harris County. His application for the writ of error was refused for want of jurisdiction. The application of Downing & Wooten for a review of our decision affirming the grant of a temporary mandatory injunction was refused with the notation, "no reversible error".

We now review a final judgment entered after a trial to a jury wherein Kraft recovered his actual damages, $38,991.10, and exemplary damages in the amount of $100,000 against the defendants, jointly and severally. Additionally, the court entered a mandatory injunction against Downing & Wooten ["Developers"] requiring the sealing of the outfall of the drainage system in the subdivision so as to prevent further damage to plaintiff's lands.

We review an extremely lengthy record with each appellant urging many points of error. We have also been favored with an amicus curiae brief confined to the liability of Langford as a professional engineer. Since we find error in the submission of the damage issue, we forego a more detailed statement of the facts.

In essence, it is sufficient to state that Kraft produced evidence which warranted the jury in finding that the drainage "improvements" designed by Langford and constructed in the Vicksburg Subdivision by developers caused a wrongful diversion of the surface water onto his lands in violation of § 5.086, Tex. Water Code Ann. (1972), which proximately caused damage to his lands.

The jury found that both defendants diverted the natural flow of surface water from Vicksburg onto the plaintiff's land after April 1, 1972, and that developers, after such date, permitted the diversion of such surface water to continue and that the diversion of such surface water caused permanent damage to plaintiff's land. The court then submitted Special Issue No. 8, reading as follows:

> "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Karl E. Kraft for the permanent damage, if any, to his 21.27-acre tract of land proximately caused by the diversion of surface water, if any, from Vicksburg Subdivision onto Plaintiff's tract between April 1, 1972, and October 27, 1975, but not thereafter?"

To which the jury answered $38,991.10, the precise amount down to the last tenth of a dollar supported by the testimony of Kraft's expert witness.

Both appellants objected to the submission of this issue in the form adopted by the court and each pointed out that, while the charge contained a definition of fair cash market value, no issue embodying such term was submitted to the jury. Further, objections were that at no time in the charge did the court inquire as to the market value of the land before the drainage "improvements" were installed and the value thereafter. The objections were properly preserved and are appropriately assigned as error.

Kraft's judgment rests exclusively upon this damage finding. After a careful review of the authorities cited by the parties, we are of the opinion that reversible error is presented.

■ It is undisputed in our record that the damage to Kraft's land was temporary rather than permanent, as those terms are defined in *Atlas Chemical Industries, Inc. v. Anderson*, 524 S.W.2d 681, 684–685 (Tex. 1975).[2] Yet, the jury was required to express in dollars and cents their estimate as to the permanent damage to Kraft's land.

■ The issue submitted only the element of permanent damage to Kraft's land; it made no inquiry—and the jury made no finding—as to temporary damage to the land.

In *City of Abilene v. Downs*, 367 S.W.2d 153, 161 (Tex.1963), the Court laid down this rule:

> "Depreciation in the value of the property is the proper measure of damages in

---

2. "Permanent damages [to land] result from an activity which is 'of such a character and existing under such circumstances that it will be presumed to continue indefinitely'; 'the injury must be constant and continuous, not occasional, intermittent or recurrent.'" 524 S.W.2d at 684, emphasis supplied.

"Temporary damages [to land], however, have been found *where the injury is not continuous but is sporadic and contingent upon some irregular force such as rain,* . . ." Id. at 685, emphasis supplied.

cases where a permanent nuisance has been created by the construction of works for a public use. . . . Under the general rule this is determined by the difference in the reasonable market value of the property immediately before and immediately after the injury."

See also, authorities cited in *Ansley v. Tarrant County Water Control and Improvement Dist. No. One,* 498 S.W.2d 469, 474 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.).

As was aptly stated in *Bradley v. McIntyre,* 373 S.W.2d 389, 391 (Tex.Civ.App.—Houston 1963, writ ref'd n.r.e.):

"In the case of temporary injury to real estate, the measure of damages is ordinarily the cost and expense of restoring the land to its former condition, plus the loss or damages occasioned by being deprived of the use of same, with interest."

See also, *Weaver Construction Company v. Rapier,* 448 S.W.2d 702, 703 (Tex.Civ.App.—Dallas 1969, no writ), where the distinctions between the measures of damage for permanent and temporary damage to land are set out with supporting authorities.

Kraft relies primarily upon two decisions to support the form of submission used: *Ft. Worth & N. O. R. Co. v. Wallace,* 74 Tex. 581, 12 S.W. 227, 228 (1889), and *Jones v. Rainey,* 168 S.W.2d 507, 509 (Tex.Civ.App.—Texarkana 1942, writ ref'd). We find neither to be dispositive.

We are of the opinion that the jury never had an opportunity to consider the proper measure of damages. The issue inquired of permanent damage and, as shown above, such damage was temporary only. *Atlas Chemical,* supra. Should the evidence upon any subsequent trial be substantially the same as that which we have reviewed in this record, the trial court should submit the damage issue involving temporary injury to real estate embodying the concept set out in *Bradley v. McIntyre,* supra.

We sustain Langford's fourteenth and fifteenth points of error and developer's fifth point. This action on our part will, consequently, requires a reversal and a remand of the cause.

Having found error requiring a reversal of the judgment, we have examined the briefs of the appellants to determine if any other points properly brought forward might require a rendition of the judgment. Having made our examination under the appropriate standards governing such review [*Schiesser v. State,* 544 S.W.2d 373, 377 (Tex.1976), and *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965)], we find no such points and all points seeking a rendition of the judgment are overruled.

However, in view of the possibility, if not probability, of another trial, we deem it appropriate to express our views upon another issue which has been raised by the parties in this appeal and which will confront the trial court upon another trial: the liability of the professional engineer.

■ First and foremost, Langford—supported by *amicus*—contends that he may not be held liable in the absence of pleading and proof that he was guilty of negligence proximately causing Kraft's damage. We disagree.

In answering this question, it must always be remembered that this case arises under unusual circumstances. As said by Dean Prosser: "The law pertaining to trespass upon land has been described as 'both exceptionally simple and exceptionally rigorous.'" *Prosser, Law of Torts, § 13, at 63 (4th Ed. 1971).*

These rules governing trespass to land have been subjected to criticism by some of the scholars. See, e. g., *1 Harper & James, The Law of Torts, § 1.3, at 9 (1956).* But, *Prosser,* citing *Gregg v. Delhi-Taylor Oil Corp.,* 162 Tex. 26, 344 S.W.2d 411 (1961), notes:

"The end of the old forms of action under the codes, however, has had its effect in relaxing the tight requirements; and there are now decisions finding a trespass in the entry of invisible gases and microscopic particles, where they do harm." (Id. at 66)

In answering Langford's contention, we turn to *City of Houston v. Renault, Inc.,* 431 S.W.2d 322, 325 (Tex.1968), where our Supreme Court adopted *Restatement, Torts,*

*§ 833 (1939),* "and comments thereunder." Actually, the Court adopted the comments under *§ 833* since the black-face language of the section does not set out any rule governing such rights and obligations.[3] We quote the rule articulated in *Renault:*

> "[T]he liability of one who causes an unintentional but substantial invasion of the land of another by interfering with the flow of surface water depends upon whether his conduct was negligent, reckless or ultrahazardous. Where the invasion is intentional, liability depends upon whether the invasion was unreasonable. An invasion is intentional within the meaning of these rules when the defendant acts for purpose of causing it or knows that it is resulting or is substantially certain to result from his conduct." [4]

Section 822, Restatement, Torts (1939), reads:

> "The actor is liable in an action for damages for a non-trespassory invasion of another's interest in the private use and enjoyment of land if, (a) the other has property rights and privileges in respect to the use or enjoyment interfered with; and (b) the invasion is substantial; and (c) the actor's conduct is a legal cause of the invasion; and (d) the invasion is either (*i*) intentional and unreasonable . . .."

An intentional invasion is defined in § 825:

> "An invasion of another's interest in the use and enjoyment of land is intentional when the actor . . . (b) knows that it is resulting or is substantially certain to result from his conduct."

Under § 834, a person is subject to the liability stated in § 822, supra, for an invasion of another's use and enjoyment of land caused by an activity "not only when he carries on the activity but also when he participates to a substantial extent in carrying it on." Under *Comment d* (§ 834), a person participates in carrying on an activity "that either directly or through the creation of a physical condition causes an invasion . . . not only when he acts for his own benefit, but also when he acts in the *capacity of servant, agent, or independent contractor.* One is not relieved from liability merely because he acts for another's benefit rather than his own." (emphasis supplied)

Indeed, this court in *McDaniel Bros. v. Wilson,* 70 S.W.2d 618, 621 (Tex.Civ.App.—Beaumont 1934, writ ref'd), held:

> "It is also the law that liability for trespass is not dependent upon personal participation. One who aids, assists, or advises a trespasser in committing a trespass is equally liable with him who does the act complained of." [5]

Several of the sections of the *Restatement* noted earlier were discussed in detail in *Ford Motor Company v. Dallas Power & Light Company,* 499 F.2d 400, 409–412 (5th Cir. 1974), applying the Texas law as enunciated in *Renault,* supra. The Court in *Ford Motor* reversed the trial court's judgment because of the failure to submit the theory of intentional invasion of the rights of the plaintiff.

See also, *Bunch v. Thomas,* 121 Tex. 225, 49 S.W.2d 421 (1932), where a "dip" in a county road permitted water to converge on the neighbor's land. The Court noted:

> "The record also shows that Bunch [defendant], while road overseer, built a bridge where the concrete dip had been previously placed. He built the bridge under the direction of the county commissioners. The mere fact, however, that he constructed the bridge under the direction of the county commissioners would not relieve him from liability for the tort, if it was a tort." (49 S.W.2d at 422–423)

which, in turn, refers to §§ 822, 825, and 826–831.

---

**3.** Section 833 reads: "Non-trespassory invasions of a person's interest in the use and enjoyment of land resulting from another's interference with the flow of surface water are governed by the rules stated in §§ 822–831."

**4.** These three sentences from *Renault* are derived from language found in *Comment a*

**5.** *McDaniel Brothers* was cited with approval in *Mountain States Tel. & Tel. Co. v. Vowell Const. Co.,* 161 Tex. 432, 341 S.W.2d 148, 150 (1960).

Langford devotes many pages in expatiation of the theory that he cannot be held liable to Kraft because he simply drafted the plans and supervised the contractor only to the extent of ascertaining that the work was done in accordance with the plans. He places emphasis on the fact that Kraft failed to show that Langford had any ownership interest in Vicksburg or a right to participate in the developer's profits. In essence, his contention is that since Kraft did not allege or attempt to prove negligence in the design, the recovery cannot stand. Again, we disagree.

After a careful consideration of the authorities cited by Langford,[6] we do not find any to be in point or persuasive in the case at the bar.

The parties have not cited any Texas case holding that a professional engineer who engages in activities similar to those of Langford in this case cannot be held strictly liable for trespass to the land of another in the absence of negligence. *Barbee v. Rogers*, 425 S.W.2d 342, 346 (Tex.1968), found our Supreme Court refusing to extend the rule of strict liability under *Restatement (Second) of Torts, § 402A (1964)*, to the sale of prescription contact lenses by a licensed optometrist. The rationale of the decision was stated to be:

"The miscarriage, if such there was, rests in the professional acts of Respondents and not in the commodity they prescribed, fitted and sold. As to this, the jury found that the negligence of Respondents in failing to properly fit the natural curvature of Petitioner's eyes was not the proximate cause of his injury."

In his law review article entitled "Strict Tort Liability in Texas", *11 Houston L.Rev. 1043, 1066 (1974)*, the author (James B. Sales) tersely states the rule of *Barbee v. Rogers:* "The concept of strict liability [in tort] applies to defective products, but not to defective services."

In our case, we do not have a sale incident to the performance of professional services as in *Barbee;* instead, we have a professional engaged in planning an economic venture for another for a fee which resulted in a trespass and damage to land. We do not find *Barbee* helpful in the disposition of the question before us.

However, our research has led us to a decision by Justice Traynor of the Supreme Court of California in the case of *Gagne v. Bertran*, 43 Cal.2d 481, 275 P.2d 15, 20 (1954), which stated a form of the rule in this language:

"[T]he general rule is applicable that those who sell their services for the guidance of others in their economic, financial, and personal affairs are not liable in the absence of negligence or intentional misconduct."

*Gagne* was followed, generally, in *La Rossa v. Scientific Design Company*, 402 F.2d 937 (3rd Cir. 1968), 29 A.L.R.3d 1416, where the Court was making an *Erie* guess as to New Jersey law on a question which had theretofore been reserved by the New Jersey Supreme Court.[7]

*Gagne* was followed again in *Stuart v. Crestview Mutual Water Co.*, 34 Cal.App.3d 802, 811, 110 Cal.Rptr. 543, 549 (1973), where other cases from that jurisdiction are cited.

A similar result was reached by the Supreme Court of West Virginia in *Foster v. Memorial Hospital Ass'n of Charleston*, 219 S.E.2d 916, 921 (1975), involving the furnishing of human blood containing serum hepatitis viruses. The Court, citing *Barbee v. Rogers,* supra, held that a recovery for injury or damage resulting from the transfer of personal property under such circumstances, must be grounded in negligence and not in an action based upon a warranty.

See also, J. Sales and J. Perdue, "The Law of Strict Tort Liability in Texas", *14 Houston L.Rev. 1, 116–117 (1976–77)*, where

---

6. Counsel cites: *Capitol Hotel Co. v. Rittenberry,* 41 S.W.2d 697, 703 (Tex.Civ.App.—Amarillo 1931, writ dism'd); *O'Neil Engineering Co. v. City of San Augustine,* 171 S.W. 524 (Tex.Civ.App.—Galveston 1914, no writ); *Pierson v. Tyndall,* 28 S.W. 232 (Tex.Civ.App.—Galveston 1894, no writ).

7. See 402 F.2d at 942 (29 A.L.R.3d at 1423) commenting upon *Totten v. Gruzen,* 52 N.J. 202, 245 A.2d 1 (1968).

the foregoing and other cases are discussed in more detail.

*Amicus,* citing *Gagne, Stuart, La Rossa,* et al., discussed earlier, concludes that a professional engineer can never be liable for professional services in the absence of pleading and proof of negligence. The cases are readily distinguishable. *Gagne* involved "three alternative theories of recovery: (1) breach of warranty, (2) deceit, and (3) negligence. The trial court made findings supporting a recovery on each of these theories." 275 P.2d at 18. The case was reversed, not because of the plaintiff's failure to prove a right to recover but because he did not prove up his right to damages. Id. at 23.

*La Rossa* was a wrongful death action arising out of inhalation of dust from vanadium pellets which, according to the plaintiff, either activated a latent condition or actually caused cancer whereof the workman died. The plaintiff pleaded negligence and a breach of express and implied warranties. The trial court granted a motion to dismiss the counts on express and implied warranty and submitted the case on the negligence counts. The jury verdict was for the defendant. 402 F.2d at 939, 29 A.L.R.3d at 1419.

The *La Rossa Court* noted that professional services do not ordinarily lend themselves to the doctrine of tort liability without fault; but, *La Rossa* did not involve a trespass to land.

Nor was *Stuart* a trespass case. Instead, as noted by the court, it was a procedural "Chinese puzzle." Fire having destroyed plaintiffs' property, they sued the water company for breach of contract to supply water and negligence in the maintenance and operation of its water system. Plaintiffs also sued the design engineers of the water system for negligence in designing, engineering, and construction of the water system. 110 Cal.Rptr. at 545. It is not in point in the case at bar.

None of the out-of-state cases cited by *amicus,* and discussed above, involved a trespass caused by an interference with the flow of the surface waters. Instead, from

our review of the authorities, many of which have not been mentioned in this discussion, we are of the opinion that the liability of Langford (*and* developers) is governed by the line of authorities cited upon the prior appeal; namely, *Gregg v. Delhi-Taylor Oil Corp.,* supra, 344 S.W.2d at 416; *Railroad Commission of Texas v. Manziel,* 361 S.W.2d 560, 567 (Tex.1962); *Glade v. Dietert,* 156 Tex. 382, 295 S.W.2d 642, 645 (1956); 87 C.J.S. *Trespass* § 13 c, at 966–967 (1954); and *Restatement (Second) of Torts,* § 158 (1965), except insofar as such rules therein enunciated may have been modified by the language found in *City of Houston v. Renault,* supra, 431 S.W.2d at 325.

Because of the error mentioned, the judgment is reversed and the cause is remanded.

REVERSED and REMANDED.