COMMUNITY PROPERTIES, INC. et al., Appellants,

v.

Clyde NEELY et ux., Appellees.

No. 1412.

Court of Civil Appeals of Texas, Tyler.

Feb. 5, 1981.

Rehearing Denied March 5, 1981.

W. Ted Minick, Winstead, McGuire, Sechrest & Trimble, Patrick F. McManemin, Dallas, Scott R. Kidd, Brown, Maroney, Rose, Baker & Barber, Austin, for appellants.

Dale E. Muller, Austin, for appellees.

MOORE, Justice.

Appellees, Clyde Neely and wife, Annie May Neely, sued appellants, Community Properties, Inc., and Mesa Village Apartment Company, for damages caused by the diversion of surface water by appellants onto a 3.1–acre tract of land owned by the Neelys and occupied by them as their home. Appellees alleged that appellants constructed a large apartment complex on property adjacent to their home and in so doing materially altered the natural flow of surface water causing it to flow across their property which resulted in damage to their yard, sidewalk, and driveway. Pleading in the alternative, appellees alleged that the continual flooding of their property consti-

tuted a temporary nuisance and sought damages for the loss of the rental value of two apartments situated on the property and damages for personal discomfort and annoyance. Pleading further in the alternative, appellees alleged that the flooding of their property was a permanent nuisance and sought damages for the depreciation in the market value of their property. Appellees further alleged in the alternative that appellants were guilty of negligence per se in impounding and diverting the surface water from the apartment complex onto their property. In addition, appellees sought exemplary damages and prayed for an injunction against appellants to prevent them from diverting the flow of the surface water. Appellants answered with a general denial.

The jury found (a) that appellants diverted or impounded the natural flow of surface water on their own property in a manner that caused damage to the property of Mr. & Mrs. Neely as a result of the overflow of the water so diverted or impounded, (b) that damage to the Neely property was "permanent," (c) that the difference in the market value of the Neely property before and after July 1978 was $40,000, (d) that the diversion of the water from appellants' apartment complex onto the property of the Neelys constituted a nuisance, (e) that the nuisance was temporary, (f) that the difference in the rental value of the Neely property before and after July 1978 was zero, and (g) that Mr. & Mrs. Neely each suffered damages in the amount of $1,000 as a result of personal discomfort, inconvenience, and annoyance. The jury further found that appellants, after learning that the water from the apartment complex was flowing onto the Neely property, failed to take adequate action to prevent the condition from occurring again; that appellants acted with "malice" in failing to take adequate action; and that the Neelys should be awarded exemplary damages in the amount of $20,000. Pursuant to the foregoing findings, the trial court rendered judgment on the verdict in favor of the Neelys for the total sum of $62,000, from which judgment appellants perfected this appeal.

Appellants' second point merits first consideration. Under this point, appellants seek a reversal on the ground that the trial court erred in submitting Special Issue No. 2 over their objection because said issue required the jury to find whether the damage to the Neely property was "temporary" or "permanent." Appellants objected to the submission of the issue in the form adopted by the trial court on the ground that the evidence, as a matter of law, established that the injury to the Neely property was temporary only. Therefore, they argue that the court erred in submitting the issue of permanency to the jury. After a careful review of the record and the authorities cited by the parties, we are of the opinion that reversible error is presented.

The record reveals that on or about September 22, 1977, appellant, Community Properties, Inc. (CPI), filed an application with the city of Austin, Texas, for a permit to construct an apartment project to be known as Mesa Village Apartments. In the course of this construction project, CPI secured the proper authorization from the city of Austin and other regulatory agencies regarding the environmental impact upon the surrounding property, including surface water diversion, caused by the construction of the apartment complex. Such authorization specifically included a requirement that CPI construct retention ponds to contain water run off so that it would be discharged onto adjacent property at no greater quantity or velocity than had been the case in the natural state. The water was to be held in retention ponds by the use of dirt berms about two feet high. The retention ponds were to be drained with eight inch pipes installed under the berms. Several of the drainage pipes were installed so that they pointed toward the Neely property.

During July 1978, while the apartment complex was still under construction, a heavy rain storm caused temporary drainage facilities on the apartment property to be washed out which resulted in the flow of water across the Neely property. Appellants were contacted by Neelys' counsel and

steps were taken to repair the berms which had been washed out. Over the course of the next eight or ten months, rains again washed out the dikes and retention ponds on three or four separate occasions. In each instance, appellants repaired the retention ponds and commenced making some changes in the drainage system in an effort to alleviate the problem. The evidence shows that even during moderate rains the water draining out of the retention ponds washed across Neely Street situated in front of the Neely home and then onto their front yard.

In their testimony, the Neelys claimed damages to their yard, trees, grass, sidewalk, driveway, and to Neely Street which was situated on the 3.1–acre tract. On one occasion, they testified that their front porch was covered with two inches of water. There is no evidence, however, that any water ever entered their home or their apartment house nor is there any evidence that either structure was damaged by water. With regard to personal injury suffered by the Neelys, Mrs. Neely testified that she was suffering with cancer and that the overflow of water and the fear of her home being flooded had annoyed her to such an extent that she was continually nervous and unable to eat or sleep properly. Mr. Neely testified that the overflow was such an annoyance to him that he could no longer live there. Both Mr. and Mrs. Neely acknowledged that the overflow occurred only when it rained.

As the construction of the apartment complex neared completion in December 1978, appellants' consulting engineer, G. W. Thompson, was instructed to address the run-off problem and prepare a plan to resolve the situation. After Thompson's plan had been approved by the city of Austin, he commenced work on the project. He decreased the size of the retainage ponds, put rock in the drainage area, and installed traffic stops in the parking area, which he testified were designed to decrease the amount and the velocity of the water draining toward the Neely property. He testified that such work had stopped the drainage into the retention ponds by fifty per-

cent. He further testified that at the time of trial on August 13, 1979, his plans had not been completed and that when completed the drainage problem would meet the requirements of the city of Austin.

Both parties offered expert testimony on the question of whether the overflow could be abated or terminated. W. C. Cotton, an expert witness called by the Neelys, testified that the problem could be abated by the construction of an underground storm sewer constructed on the edge of Neely Street at a cost of $34,638.00. Isom Hale, an expert witness called by appellants, likewise testified that the water problem could be solved by the construction of a storm sewer. William Wenzel, a real estate broker called by the Neelys, testified that the damages to their lawn, trees, sidewalk, and driveway could be repaired for between $2,000 to $3,000.

■ In response to Special Issue No. 1, the jury found that appellants diverted or impounded the natural flow of surface waters on their property causing it to flow onto the Neely property which resulted in damages to the Neely property. Appellants do not challenge this finding. Consequently, it must be taken as an established fact that the conduct of the appellants resulted in some damage to the Neely property. Thus the initial question presented is whether the injury to the Neely property was "temporary" or "permanent."

In *Kraft v. Langford*, 565 S.W.2d 223 (Tex.1978), the court was presented with the question of whether damages to land caused by the diversion of surface water was temporary or permanent. In determining the question, the court said:

The type of compensation to be awarded for an injury to real property is not invariable, but will depend upon the nature of the injury. See *Atlas Chemical Industries, Inc. v. Anderson*, 524 S.W.2d 681 (Tex.1975); see, generally, 25 C. J. S. Damages § 84 (1966). Permanent injuries give rise to a cause of action for permanent damages, normally measured as the difference in the value of the prop-

erty before and after the injury. See, e. g., *Fort Worth & D. C. Ry. Co. v. Hogsett,* 67 Tex. 685, 4 S.W. 365 (1887). Temporary injuries, on the other hand, give rise to a cause of action for temporary damages, the proper measure of which is the amount of "damages which have accrued during the continuance of the injury covered by the period for which the action is brought." *Lone Star Gas Co. v. Hutton,* 58 S.W.2d 19, 21 (Tex.Comm. App.1933, holding approved). Stated differently, the proper measure of damages for a temporary injury to real property is the amount necessary to place the owner of the property in the same position he occupied prior to the injury.

The character of an injury as either permanent or temporary is determined by its continuum. Permanent injuries are those which are constant and continuous, not intermittent or recurrent. *Atlas Chemical Industries, Inc. v. Anderson, supra.* Temporary injuries are those which are not continuous but are "sporadic and contingent upon some irregular force such as rain." Id. Another characteristic of a temporary injury is the ability of a court of equity to enjoin the injury causing activity. An injury which can be terminated cannot be a permanent injury. The concepts of temporary and permanent injuries are mutually exclusive and damages for both may not be recovered in the same action. *Lone Star Gas Co. v. Hutton, supra,* at 21.

See also *Langford v. Kraft,* 551 S.W.2d 392 (Tex.Civ.App.—Beaumont 1977) *aff'd* 565 S.W.2d 223 (Tex.1978); *Weaver Construction Co. v. Rapier,* 448 S.W.2d 702 (Tex.Civ. App.—Dallas 1963, no writ); 17 Tex.Jur.2d Damages sec. 69, p. 144.

■ Upon applying the foregoing rules of law to the facts in the present case, we conclude that the evidence shows, as a matter of law, that the injuries to the Neely property were temporary rather than permanent. Under the undisputed proof, the instrumentality causing the injury was not constant and continuous, but occurred only sporadically contingent upon the irregular force of rain. The undisputed proof shows that the injury was capable of being terminated by the construction of an underground storm sewer. Further, the injury was of such nature that a court of equity could have enjoined appellants from diverting the flow of the water. Finally, the Neelys offered evidence showing that the damages to their property was such that it could be repaired. It occurs to us that the injury to the Neely property had all of the characteristics of a temporary injury and none of the characteristics of a permanent injury. Yet, under the court's charge, the jury was permitted to find that the injury was permanent. This error resulted in the jury finding that the injury was permanent and assessing permanent damages. Under the court's charge, the jury never had an opportunity to consider the proper measure of damages because the court instructed the jury that it was not to make a finding on any of the various elements comprising temporary damage in the event they found the injury to be permanent. Should the evidence upon any subsequent trial be substantially the same as that presented in this record, the damage issue should be confined so as to permit a recovery for temporary injury only.

■ Before discussing the remaining points, we deem it appropriate at this juncture to allude to that portion of the judgment awarding Mr. & Mrs. Neely $1,000 each for personal discomfort, inconvenience, and annoyance. This portion of the judgment is predicated upon the finding that appellants' conduct in diverting the water created a temporary nuisance.

Nowhere in their brief do appellants have a point of error challenging that portion of the judgment awarding the Neelys the sum of $2,000 for personal discomfort and annoyance. Although appellants were permitted to file a post-submission brief, they again failed to challenge the judgment in this regard. Inasmuch as the judgment for $2,000 has not been challenged by any point of error, this portion of the judgment is binding on this court and may not be disturbed on appeal.

■ The claim of the Neelys for personal discomfort and annoyance stands on a different footing from their claim for damages for injury to the land. For personal discomfort and annoyance, the law allows damages regardless of whether the nuisance that causes such injuries be of a permanent nature or not. In such cases the right of action does not depend on injury to the land. *Lacy Feed Co. v. Parrish*, 517 S.W.2d 845 (Tex.Civ.App.—Waco 1974, no writ); *Vann v. Bowie Sewerage Co.*, 127 Tex. 97, 90 S.W.2d 561 (1936) citing cases.

■ Inasmuch as the judgment awarding damages for personal discomfort and annoyance stands unchallenged and is clearly separable without unfairness to the parties, appellees are entitled to recover compensatory damages for personal discomfort and annoyance even though that part of the judgment awarding them a recovery for permanent injuries to the land must be reversed. Tex.R.Civ.P. 434.

This brings us to appellants' seventh point of error wherein they contend that the trial court erred in submitting issues on exemplary damages to the jury because there is no evidence in the record tending to show any malice on the part of appellants. In this connection the record shows that the trial court submitted Special Issue No. 6 which requested the jury to find whether appellants, after first learning that the water from the apartments was flowing onto the Neely property, failed to take adequate action to prevent the condition from occurring again. Special Issue No. 7 requested the jury to find whether the appellants acted with "malice" in failing to take adequate action. In connection with the latter issue, the Court instructed the jury that the term "malice" means ill will, or bad or evil motive, or such gross indifference or reckless disregard to the rights of others as to amount to a willful or wanton act. The jury answered both issues in the affirmative and awarded the Neelys exemplary damages in the amount of $20,000.

The general rule is that exemplary damages for injuries to real property will not be awarded in the absence of the existence of aggravation. *Scurlock Oil Co. v. Joffrion*, 390 S.W.2d 526 (Tex.Civ.App.—Tyler 1965, no writ); *Upham Gas Co. v. Smith*, 247 S.W.2d 133 (Tex.Civ.App.—Fort Worth 1952, no writ); 25 C. J. S. Damages sec. 121.

In 17 Tex.Jur.2d Damages sec. 178 in discussing the general rule relating to exemplary damages, it is said:

In order that a recovery of exemplary damages may be sustained, the plaintiff must show, not merely that the defendant could have or ought to have foreseen and prevented the loss or injury of which the plaintiff complains, but that he acted intentionally or wilfully, or with a degree of gross negligence that approximates a fixed purpose to bring about the injury of which the plaintiff complains. And by gross negligence is meant such an entire want of care as would raise a presumption of a conscious disregard for the rights of others and a conscious indifference to the consequences of his act. Gross negligence is positive and affirmative and not merely passive and is the only character of negligence that will support an award for exemplary damages. Gross negligence requires that there must be an entire want of care, since it is not a matter of degree.

The state of mind that will sustain an award of exemplary damages has been described as such as is shown by acts of 'malice,' 'fraud,' 'oppression,' or a 'reckless' or 'wanton' disregard for the rights of others.

■ It is settled law that negligence or the want of ordinary care will not expose the actor to exemplary damages, *Atlas Chemical Industries, Inc. v. Anderson*, 524 S.W.2d 681, 687 (Tex.1975), citing cases; nor does a mere unlawful act suffice. *Ogle v. Craig*, 464 S.W.2d 95 (Tex.1971); *Atlas Chemical Industries, Inc. v. Anderson, supra.*

■ In our opinion no evidence of probative value was offered to show the necessary elements upon which a finding of exemplary damages must be based. The record reveals no evidence or any facts or

circumstances sufficient to uphold a finding of malice, ill will, conscious indifference, nor such disregard of appellees' rights as to amount to malice or evil intent. The evidence shows that immediately after appellants were notified that the surface water was draining onto the Neely property, steps were taken to remedy the situation. Further, the evidence shows that on each occasion in which the berms were washed out because of heavy rains, appellants repaired the berms in an effort to slow the velocity of the water flowing upon the Neely property. At the time of trial appellants were in the process of installing a new system to control the velocity and the amount of water flowing from the apartment complex. The fact that appellants were not successful in eliminating the problem, or that they could have done more than they did under the circumstances, does not constitute gross negligence as required for the assessment of punitive damages. *Sheffield Division, Armco Steel Corp. v. Jones*, 376 S.W.2d 825 (Tex.1964). After viewing the record most favorably to appellees, we are nevertheless of the opinion that the evidence fails to meet the requirement that there be an entire want of care on the part of appellants which would raise the belief that the omission complained of was the result of a conscious indifference to the rights or welfare of the Neelys. It follows that the exemplary damage issue should not have been submitted to the jury.

Other points brought forward by appellants have been considered and found to be without merit and are overruled.

We conclude, to sum up the situation, that (a) that part of the judgment awarding the Neelys a recovery of the sum of $40,000 for permanent injury to their property is reversed and remanded, (b) that part of the judgment awarding a recovery for exemplary damages in the amount of $20,000 is reversed and judgment is rendered that the Neelys take nothing by way of exemplary damages, and (c) the judgment is modified so as to award the Neelys a recovery for personal discomfort and annoyance in the amount of $2,000 with interest thereon at the rate of nine percent (9%) per annum from the date of judgment, and as so modified, the judgment is affirmed.

Affirmed in part; reversed and remanded in part; and reversed and rendered in part.