[Civ. No. 40456. Second Dist., Div. Five. Oct. 25, 1973.]

DAN STUART et al., Plaintiffs and Appellants, v.
CRESTVIEW MUTUAL WATER COMPANY,
Defendant, Cross-complainant and Appellant;
JANSS INVESTMENT CORPORATION,
Defendant, Cross-defendant and Respondent;
JENSEN ASSOCIATES, Cross-defendant and Respondent;
CAL-FARM INSURANCE COMPANY, Intervener and Appellant.

COUNSEL

Heily, Blase, Ellison & Wellcome, DeWitt F. Blase, R. W. Levy, Franklin J. Mitchell, Jr., Jim D. Mills, Lascher & Rader and Edward L. Lascher for Plaintiffs and Appellants and for Intervener and Appellant.

Wise, Kilpatrick & Clayton, Sterling S. Clayton and William D. Easton for Defendant, Cross-complainant and Appellant.

Reilly, Holzhauer & Nimmo and Albert J. Holzhauer for Defendant, Cross-defendant and Respondent.

James E. Dixon for Cross-defendant and Respondent.

## OPINION

**KAUS, P. J.**—Plaintiffs and appellants Stuart and Norbury ("property owners") own property in Camarillo. In September 1970, a fire burned the Stuarts' home to the ground and destroyed avocado trees on the Norburys' property. The property owners sued Crestview Mutual Water Company ("water company"), for breach of a contract to furnish water and negligence in maintaining and operating the water system, Janss Investment Corporation ("developer") and Jensen Associates ("engineers") for negli-

gence in designing, engineering and constructing the water system. Various demurrers, motions for judgment on the pleadings or for summary judgment were filed by the defendants. All such motions were granted by the trial court, which gave judgment in favor of all the defendants involved in this appeal.[1]

As is apparent (see fn. 1, *supra*) procedurally this case is a Chinese puzzle. Actually, however, the legal issues involved boil down to whether or not plaintiffs should have been permitted to file a first amended complaint. It is clear that the trial court would have given leave to file it, had it felt that it stated a cause of action against any defendant.[2]

The proposed first amended complaint alleged these background facts: Crestview, the water company, which was incorporated in 1950, owned, managed, maintained and operated a water distribution system; the system was designed, engineered and constructed by Janss, the developer, and Jensen Associates, the engineers.

Jensen Associates are in the business of designing, engineering and constructing water development systems, and knew and intended that the water

---

[1]This part of the statement of the case is an over-simplification. Originally plaintiffs only sued Crestview and Janss. Crestview then filed a protective cross-complaint for indemnity against Jensen and Janss. Crestview and Janss answered the complaint. Janss answered the cross-complaint, Jensen demurred to it. Cal-Farm Insurance Company filed a complaint in intervention which Crestview and Janss answered. Crestview moved for summary judgment and judgment on the pleadings against plaintiffs and intervener. Janss moved for judgment on the pleadings. Plaintiffs noticed a motion to file a first amended complaint, adding Jensen as a named defendant. All matters were heard at the same time. Crestview's and Janss' motions were granted, Jensen's demurrer was sustained. Leave to file the proposed first amended complaint was denied. Judgments of dismissal followed from which plaintiffs, intervener and Crestview appeal.

[2]The trial court refused to allow the filing of the amended complaint as to these defendants solely because the additional allegations did "not cure the defect of the plaintiffs' case against Janss, Crestview, Jensen Engineers and Martin, to wit, the allegations do not meet the test required by the case law that in the absence of an express contract to furnish sufficient water for the express purpose of fire fighting, there can be no obligation imposed upon the supplier of water. . . ." Defendants Crestview and Janss and cross-defendant (and proposed defendant) Jensen agree with the assumptions of the trial court and deal directly with the allegations in the proposed first amended complaint. In the circumstances, we shall assume that the first amended complaint is the one before us, and that defendants' and cross-defendants' demurrers, motions for judgment on the pleadings, etc. were filed against the first amended complaint.

It appears from plaintiffs' brief that they inadvertently omitted from the proposed first amended complaint the breach-of-contract allegations contained in the original complaint. The contract consists of the articles of incorporation and the by-laws of the water company, attached to the water company's motion for summary judgment and conceded by the plaintiffs to be correct.

distribution system would be used to supply water for fire protection services for persons such as plaintiffs who lived in the Crestview water area.

Janss is in the business of developing residential property, and, as part of the business operations, directed the design, planning and layout of the water distribution system, and hired engineers to design and construct it. Janss transferred the water system to Crestview, knowing and intending that, among other purposes, the system would be used for fire protection, and that the system would be used without opportunity for inspection by the users.

On September 26, 1970, there was a fire which spread towards plaintiffs' properties. Because the supply and flow of water from the water system was inadequate, plaintiffs were unable to protect their properties from the spreading fire. As a result they suffered substantial damages.

Allegations intending to fasten liability for the loss on the three defendants, the water company, the developer and the engineers, are set forth below.

### Liability of the Water Company

Three of the causes of action which plaintiffs attempt to state are directed against Crestview, the water company. They proceed, respectively, on theories of negligence, failure to comply with certain standards established by the supervisors of Ventura County in 1965, and breach of contract.

Plaintiffs concede, as indeed they must, that under an unbroken line of cases starting with *Ukiah* v. *Ukiah Water and Imp. Co.,* 142 Cal. 173 [75 P. 773] and ending, perhaps, with *Heieck and Moran* v. *City of Modesto,* 64 Cal.2d 229 [49 Cal.Rptr. 377, 411 P.2d 105], California case law has immunized water companies from civil liability for loss by fire due to failure to maintain their systems properly.[3]

It is, literally, hornbook law that this immunity represents an aberration in the context of modern tort principles. (Prosser, Law of Torts (4th ed.) pp. 625-626.)[4]

---

[3]Some of the stops along the line were: *Niehaus Bros. Co.* v. *Contra Costa etc. Co.,* 159 Cal. 305 [113 P. 375]; *Hunt Bros. Co.* v. *San Lorenzo, etc. Co.,* 150 Cal. 51 [87 P. 1093]; *Stang* v. *City of Mill Valley,* 38 Cal.2d 486 [240 P.2d 980]; *Luis* v. *Orcutt Town Water Co.,* 204 Cal.App.2d 433 [22 Cal.Rptr. 389]; *Luning M.P. Co.* v. *East Bay W. Co.,* 70 Cal.App. 94 [232 P. 721].

[4]See also Seavey, *Mr. Justice Cardozo and the Law of Torts,* 52 Harv.L.Rev. 372, 391-393, criticizing the leading decision in the field, *H. R. Moch Co.* v. *Rensselaer Water Co.,* 247 N.Y. 160 [159 N.E. 896, 62 A.L.R. 1199].

Rational attacks on water company immunity can be made on at least three distinct grounds.

1. First and foremost it is arguable that if section 1714 of the Civil Code, as interpreted in *Rowland* v. *Christian,* 69 Cal.2d 108, 118-119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], can sweep away judicially created immunities which have favored possessors of real property, it can, or indeed must, affect other immunities.

2. A close reading of California cases seems to support the argument that we have reached the present state of the law by a paradox: one of the reasons given in the cases for immunizing water companies is that they are really performing a municipal function and that the water company "cannot be charged with a greater liability than the city itself." (*Ukiah* v. *Ukiah Water and Imp. Co., supra,* 142 Cal. at p. 178.) Yet in *Stang* v. *City of Mill Valley, supra,* 38 Cal.2d 486, the court continued to recognize the immunity in spite of the Public Liability Act of 1923, on the ground that the Legislature could not have intended that public entities should be liable where private companies were not. (*Ibid.,* p. 491.)

3. Several of the rationales which have been adduced in favor of water company immunity have failed to evoke similar judicial response when considered, in connection with other enterprises. (E.g., *Hanlon D. & S. Co.* v. *Southern Pac. Co.,* 92 Cal.App. 230, 235 [268 P. 385] (railroads); compare *Langley* v. *Pacific Gas & Elec. Co.,* 41 Cal.2d 655, 661 [262 P.2d 846] (electric company); with *Gelhaus* v. *Nevada Irrigation Dist.,* 43 Cal. 2d 779, 783 [278 P.2d 689] (water district).)

Nevertheless even after all these arguments are carefully considered, the question remains whether it is appropriate for an intermediate appellate court to announce a holding squarely contrary to several Supreme Court authorities directly in point. Our conclusion is that it would be improper for us to do so in this particular situation. The best we can do for plaintiffs is to note that the record adequately presents the issue for Supreme Court consideration.[5]

---

[5]Nevertheless, even if the Supreme Court should change the rule of immunity, the effect of such a decision may be short lived. The 1972 Legislature enacted section 774 of the Public Utilities Code which reads as follows: "No water corporation which has undertaken to provide fire protection service, nor any employee of such corporation acting in the course and scope of his employment, shall be liable for any death or injury to a person or damage to or loss of property resulting from a failure to provide or maintain an adequate water supply or pressure, or any equipment or other fire protection facility or service; provided, that such immunity from liability shall not exceed that of a public agency or any of its employees, as the case may be,

As a separate cause of action plaintiffs plead that the water company knew or should have known that there was an extreme fire danger on or about September 26, 1970, but "wilfully and deliberately" permitted large amounts of water to be withdrawn from its reservoirs and to be diverted to nonessential uses, such as watering a country club. While these allegations may, perhaps, point up the injustice of the established immunity of water companies, they really amount to nothing more than a specific pleading of negligence.

Plaintiffs' second theory against the water company is based on an alleged violation of certain standards established by a resolution of the Ventura County Board of Supervisors adopted in 1965. At our request a copy of the resolution in question was furnished to us by the parties. (Evid. Code, § 459.) It appears to be an approval, by the board of supervisors, of a recommendation of a department head recommending the publication of a revised Water Works Manual and referring a problem concerning the inclusion of "dry" type of fire hydrants to the county fire department.

■ Even if water company immunity for common law negligence is subject to an exception based on violation of a statute or local ordinance, clearly a resolution to publish a "Water Works Manual" at some time in the future, does not suffice to raise the issue.

As noted earlier (see fn. 2, *supra*) plaintiffs' original complaint contained a cause of action, directed against the water company, based on express contract. Whether or not it was inadvertence which caused that theory to be omitted from the first amended complaint is really immaterial, since it has no merit. The contract on which plaintiffs apparently rely appears to be the statement of purposes in the articles of incorporation of Crestview which reads, in part, as follows: "To furnish, supply and distribute water at cost to and for its stockholders for domestic irrigation, and other useful purposes . . ."

---

under similar circumstances. Nothing in this section shall preclude the enforcement of any rule, regulation, or order of the commission."

Curiously, however, it is quite arguable that section 774 does not apply to mutual water companies, such as Crestview. It is found in a chapter of the code (Pub. Util. Code, § 701 et seq.) which deals with regulation of public utilities. The last sentence of the section confirms that its intended beneficiaries are public utilities. Yet by virtue of the definitions contained in sections 2705 and 2725 of the Public Utilities Code, mutual water companies, such as Crestveiw, are not public utilities.

Whether or not this is a matter of legislative oversight, we do not know. Nor need we attempt to find a rational basis for distinguishing between mutual water companies and all other such companies, as far as the effect of section 774 is concerned.

It is, however, established that "a water company is not liable for damages resulting from a failure to supply water for a particular use in the absence of a specific undertaking to supply water for that use." (*Gelhaus* v. *Nevada Irrigation Dist., supra,* 43 Cal.2d 779, 782.) Plaintiffs argue that fire extinguishing is a "useful purpose" of water. So, to be sure, it is. The fact remains, however, that Crestview did not specifically undertake to supply water for that purpose.

To sum up: the first amended complaint does not plead facts constituting a cause of action against Crestview, the water company.

*Liability of Developer and Engineers*

The first amended complaint attempts to state causes of action against the developer and the engineers on the following theories: 1. negligence in the design, engineering, construction and maintenance of the water system; and 2. strict liabilty.[6]

We first consider the cause of action for negligence. ▮ The complaint under consideration alleges in language more than adequate to withstand a general demurrer, that when the property was developed and before the water distribution system was turned over to Crestview, the developer and the engineers so negligently designed, engineered and constructed the system as to cause the failure of water delivery when the need occurred 20 years later.

This cause of action is entirely distinct from the causes of action which plaintiffs attempt to state against the water company. The allegations are broad enough to cover any conceivable defect in the design and construction of the system which caused an inadequate supply of water to be available at the time of the fire. It does not require an extensive citation of authorities to demonstrate the adequacy of these allegations. (*Dow* v. *Holly Manufacturing Co.,* 49 Cal.2d 720, 725 [321 P.2d 736]; *Gagne* v. *Bertran,* 43 Cal.2d 481, 489-490 [275 P.2d 15]; *Knell* v. *Morris,* 39 Cal.2d 450, 456 [247 P.2d 352]; *Hale* v. *Depaoli,* 33 Cal.2d 228, 230-232 [201 P.2d 1, 13 A.L.R.2d 183]; *Peak* v. *Richmond Elementary Sch. Dist.,* 161 Cal. App.2d 366, 368 [326 P.2d 860].) The passage of time presents, at best, a question of fact. (See authorities collected in *Balido* v. *Improved Machinery, Inc.,* 29 Cal.App.3d 633, 642-643 [105 Cal.Rptr. 890].)

---

[6]Plaintiffs also attempt to state, as a separate cause of action, that the developer and the engineers failed to comply with the June 8, 1965, resolution of the Ventura County Board of Supervisors. With all respect, it escapes us how anything that the Ventura County board did 15 years after the water distribution system was turned over to Crestview can affect the liability of the developer and the engineers.

The developer's and engineers' only theory is that somehow they are entitled to piggyback immunity on Crestview's shoulders. No authority is cited to support this theory.　█　Instead the engineers' brief misstates the rule of immunity as applying to all "water suppliers" and then assumes that the engineers who merely designed the conduits for such supply fall within that category. Having thus transformed the engineers into a water company, the brief proceeds with a spirited defense of water company immunity.[7] The developer's brief similarly makes no effort to justify the claimed immunity from the law of negligence, but simply informs us that it "can add no additional decisional authority beyond that already provided and so cogently discussed in Respondent's Brief on behalf of Jensen."

At the oral argument of this appeal we specifically inquired of counsel whether they knew of any reason other than water company immunity which militated against plaintiffs having stated a cause of action against their clients. They knew of none. Neither do we.[8]

We turn to strict liability. As far as the developer is concerned we find this case indistinguishable in principle from *Avner* v. *Longridge Estates,* 272 Cal.App.2d 607, 615 [77 Cal.Rptr. 633] and *Kriegler* v. *Eichler Homes, Inc.,* 269 Cal.App.2d 224, 227 [74 Cal.Rptr. 749]. In *Kriegler* the defendant developer who had built thousands of homes was held strictly liable to an owner-once-removed of one of the homes, when certain steel tubing used in the heating system failed. In *Longridge* the defendant had developed hillside property in which the plaintiff purchased a lot and built a home. Several years later the lot-pad settled and a filled slope failed. The developer's legal responsibility on a strict liability theory was recognized.

---

[7]In the engineers' brief filed in the trial court they wrote: "[A]nachronistic though it may be, . . . there are still some losses which cannot be converted into ordinary income for plaintiffs' lawyers. After 20 years of reeling from the impact of decision after decision expanding tort liability, it is a pleasure to find this one isolated little meadow, ecologically protected from the pollution of ever-expanding tort liability, where a work horse defense attorney can graze in a green pasture of immunity. . . ."

The trouble with that position, below as well as here, is that the engineer and his mount are trespassers in the "isolated little meadow" in which the latter finds so much nourishment.

[8]It is, of course, entirely possible that at the trial plaintiffs may prove negligence on the part of the developer or the engineers, but fail to recover from anybody. Thus the proof may show that the water company's acts or omissions were such that they became a superseding cause. (See *Vesely* v. *Sager,* 5 Cal.3d 153, 163-164 [95 Cal.Rptr. 623, 486 P.2d 151]; *Ewart* v. *Southern Cal. Gas Co.,* 237 Cal.App.2d 163, 170-171 [46 Cal.Rptr. 631].) Obviously such a state of facts cannot be foretold at this time.

In this case the developer installed a water distribution system. While the complaint does not allege whether the defective system was on plaintiffs' properties, the point is really immaterial. The purpose of such a system is, in part, to help protect the properties in the subdivision in case of fire. Legally it should make no difference whether the pipes, hydrants and other installations are located on or off the lots. In any event the doctrine that strict liability extends to bystanders (*Elmore* v. *American Motors Corp.,* 70 Cal.2d 578, 586-587 [75 Cal.Rptr. 652, 451 P.2d 84]) is ample to protect plaintiffs.

We cannot, however, find any basis for holding the engineers on a strict liability theory. They rendered a professional service and are in no sense analogous to manufacturers who place products on the market and who are, therefore, in the best position to spread the cost of injuries resulting from defective products. (*Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57, 63 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; *Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453, 462 [150 P.2d 436].) A relatively recent decision, *Allied Properties* v. *John A. Blume & Associates,* 25 Cal.App.3d 848, 855-856 [102 Cal.Rptr. 259] sums up the present state of our law with respect to the liability of professionals: "[T]he well settled rule in California is that where the primary objective of a transaction is to obtain services, the doctrines of implied warranty and strict liability do not apply (cf. *Carmichael* v. *Reitz,* 17 Cal.App.3d 958 [95 Cal.Rptr. 381]). As originally stated in *Gagne* v. *Bertran,* 43 Cal.2d 481 [275 P.2d 15], former Chief Justice Traynor, in holding there was no strict implied warranty liability on the part of a test hole driller, stated at page 487: 'He was not a seller of property who obligated himself as part of his bargain to convey property in the condition represented. The amount of his fee and the fact that he was paid by the hour also indicate that he was selling service and not insurance. Thus the general rule is applicable that those who sell their services for the guidance of others in their economic, financial, and personal affairs are not liable in the absence of negligence or intentional misconduct.'

"This rule has been consistently followed in this state with respect to professional services (*Roberts* v. *Karr,* 178 Cal.App.2d 535 [3 Cal.Rptr. 98] (surveyor); *Gautier* v. *General Telephone Co.,* 234 Cal.App.2d 302 [44 Cal.Rptr. 404] (communications services); *Bonadiman-McCain, Inc.* v. *Snow,* 183 Cal.App.2d 58 [6 Cal.Rptr. 52] (engineer); *Lindner* v. *Barlow, Davis & Wood,* 210 Cal.App.2d 660 [27 Cal.Rptr. 101] (accountant); *Pancoast* v. *Russell,* 148 Cal.App.2d 909 [307 P.2d 719] (architect)).

"As the court further stated in *Gagne, supra,* at pages 489 and 490: 'The services of experts are sought because of their special skill. They have a duty to exercise the ordinary skill and competence of members of their profession, and a failure to discharge that duty will subject them to liability for negligence. Those who hire such persons are not justified in expecting infallibility, but can expect only reasonable care and competence. They purchase service, not insurance. [Citations.]' "

## Disposition

The rather complex disposition of this appeal results from the procedural intricacies summarized in footnote 1.

The judgment in favor of Crestview Mutual Water Company and against plaintiffs and intervener (entered January 21, 1972, book 22X, page 268) is affirmed.

The judgment in favor of Janss Investment Corporation and against plaintiffs and intervener (entered January 20, 1972, book 22X, page 260) is reversed.[9]

The judgment in favor of Jensen Associates and against Crestview Mutual Water Company on Crestview's cross-complaint (entered January 31, 1972, book 22X, page 320) is affirmed.

The case is remanded to the trial court for proceedings not inconsistent with this opinion.[10]

Ashby, J., and Hastings, J., concurred.

The petitions of appellants Stuart, Norbury and Cal-Farm Insurance Company and of respondent Jensen Associates for a hearing by the Supreme Court were denied December 19, 1973.

---

[9]Intervener erroneously appealed from the judgment on Crestview's cross-complaint in favor of Jensen. (See Witkin, Cal. Procedure (2d ed. 1971) pp. 4313-4315.

[10]To clarify: the procedural status of the case now is that a proposed first amended complaint directed against the developer and the engineers is before the court on plaintiffs' motion for leave to file the same. The import of our opinion is, of course, that the trial court erred in refusing leave to amend on the ground that no cause of action against those defendants was stated and that leave to file the amended complaint should be granted. Nothing in this opinion precludes the remaining defendants from urging any special demurrer which they may feel appropriate.

None of the parties has mentioned it, but the day after the trial court's rulings, plaintiffs and intervener dismissed the case "without prejudice." Apparently all concerned agree that this purported dismissal was a nullity. (*Goldtree* v. *Spreckels,* 135 Cal. 666, 672-673 [67 P. 1091]; cf. *Berri* v. *Superior Court,* 43 Cal.2d 856, 859 [279 P.2d 8].)