[No. H014191. Sixth Dist. Sept. 25, 1997.]

VALLEY TITLE COMPANY et al., Plaintiffs and Respondents, v.
SAN JOSE WATER COMPANY, Defendant and Appellant.

**COUNSEL**

Jackson, Tufts, Cole & Black, Gerald Z. Marer and Jose H. Garcia for Defendant and Appellant.

Cozen & O'Connor, Gerard P. Harney, Charles E. Wheeler and Kurt M. Kjelland for Plaintiffs and Respondents.

**OPINION**

**COTTLE, P. J.**—A fire service pipeline outside the building of Valley Title Company (Valley) ruptured in 1992, flooding the building. Valley and others sued San Jose Water Company (SJWC) and others for the property damage, alleging that SJWC had failed to inspect, repair, replace, and stabilize the line adequately. A jury found SJWC liable for negligence and trespass, awarding Valley approximately $3 million. SJWC appeals from the ensuing judgment. Because we conclude that SJWC is immune from Valley's claims pursuant to section 774 of the Public Utilities Code, we reverse the judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. *The Parties*

SJWC is an investor-owned utility governed by the Public Utilities Commission. SJWC has a service area of approximately 134 square miles, including portions of the City of San Jose and surrounding communities, and owns approximately 2,300 miles of water lines. Of these, over 500 miles are cast iron water lines. SJWC's system includes distribution mains located under city streets, and lateral pipes (also called mains or service pipes) which run from the distribution mains to connect with customers' pipes.

Valley is a title insurance company with its principal office at First and San Carlos Streets in San Jose, in a building constructed in 1931 as a department store. Valley has owned and occupied this building since 1970.

## B. *Valley's Fire Protection System*

Generally, when a fire service is installed for a building, lateral lines from street water mains connect with customers' pipes extending horizontally from the building at a depth of approximately three feet underground. The lines linking the street water main to the Valley building's fire protection system, installed when the building was constructed in 1931, were unusual. SJWC's lateral pipe ran from the main underneath the street at the standard depth of three feet. At a point three and one-half feet from Valley's basement wall, SJWC's lateral line connected to a *vertical* pipe, which dropped, then connected with a horizontal pipe extending under the building's basement, and later connected with another vertical pipe which went up into the basement.

## C. *The 1986 Change*

In 1986, SJWC was required to move and lower its water lines under San Carlos Street to accommodate San Jose's light rail system. On January 3, 1986, SJWC's plumbing subcontractor connected a new lateral line to the Valley building. Upon excavating to the expected horizontal pipe, workers found that the lateral was connected with a 90-degree fitting to a vertical pipe. The workers exposed a portion of the vertical pipe, removed the existing 90-degree connection, attached the new lateral pipe with a 90-degree joint, and then backfilled the area with soil. When the water to this new service was released, however, water came out of the ground and also went into Valley's basement. The water was turned off.

On January 6, 1986, workers exposed the 90-degree joint, and did additional work to reconnect the new lateral pipe with the vertical pipe.

On January 9, 1986, after SJWC had been informed that the leak on January 3, 1986, had occurred at the 90-degree connection, SJWC told Valley to send a bill for the cleanup of some water which had entered the basement. Valley submitted a bill for $470, which SJWC paid.

## D. *The 1992 Leak*

On October 10, 1992, a leak occurred in the original vertical pipe. The leak flooded the street and Valley's basement, destroyed the contents of the

basement including Valley's " 'back title files,' " and caused other damages not relevant to this appeal.

### E. *Procedural Background*

On October 8, 1993, Valley and its insurer filed a complaint against SJWC, claiming damages based on the 1992 rupture of the fire service line which flooded the basement of Valley's building. Valley's insurer sued SJWC to recover payments it made to Valley. The case was eventually submitted to the jury on two causes of action, trespass to land and negligence.[1]

Before trial, SJWC moved under Code of Civil Procedure section 592 for an order that pursuant to Public Utilities Code section 774, SJWC had immunity against all of plaintiffs' claims.[2] This pretrial motion was denied. During trial, SJWC sought a directed verdict based on the 10-year and 4-year statutes of limitations of Code of Civil Procedure sections 337.15 and 337.1 for latent and patent defects in improvements to realty, and on the grounds that Valley had failed to meet its burden to prove the elements of negligence or trespass to land. This motion was also denied.

The case was tried to a jury beginning on January 9, 1995. The parties presented extensive evidence, including competing expert testimony regarding the cause of the leak and the valuation of Valley's damages.

On or about April 10, 1995, the jury returned its special verdict, finding that the flooding constituted trespass by SJWC upon Valley's property, that SJWC was negligent, and that SJWC's trespass and negligence caused $3 million damage for uninsured loss to Valley's back title files. Judgment was entered on April 10, 1995.[3]

SJWC filed motions for new trial and judgment notwithstanding the verdict, which were denied on June 9, 1995. On June 10, 1995, SJWC filed a notice of appeal from the judgment and from the denial of its motion for judgment notwithstanding the verdict. On September 19, 1995, the trial court

---

[1]Prior to and during trial, other defendants were dismissed or reached settlements with the plaintiffs.

[2]SJWC had previously moved for summary judgment based on Public Utilities Code section 774, and this motion was denied. SJWC filed a writ petition with this court requesting that the order denying summary judgment be vacated. This court denied the writ petition on November 18, 1994.

[3]The verdict and judgment also included amounts awarded to the insurer for insured losses not involved in this appeal. The only damage involved in this appeal is that of Valley's destroyed back title files.

awarded prejudgment interest to Valley. On October 26, 1995, SJWC filed a notice of appeal from that prejudgment interest order.

## F.  *This Appeal*

On appeal, SJWC argues essentially the following: (1) that SJWC is immune from liability for all of Valley's claims pursuant to Public Utilities Code section 774; (2) that all of Valley's claims are barred by the four-year and ten-year statutes of limitations for patent and latent defects of completed works of improvement to real property; (3) that the trial court erred in instructing the jury regarding res ipsa loquitur; (4) that Valley did not present sufficient evidence to support a negligence claim; (5) that the court erred in excluding, during trial, SJWC's 1931 records regarding ownership of the vertical pipe; (6) that as a matter of law, SJWC was not liable for trespass to land; (7) that no competent evidence supported the jury's determination of $3 million in damages; and (8) that the court exceeded its jurisdiction and erred in awarding prejudgment interest to Valley. We shall address the immunity issue first.

## II.  Discussion

### *Immunity Under Public Utilities Code Section 774*

#### 1.  *Standard of Review*

This court independently reviews the proper interpretation of Public Utilities Code section 774 and its application to the facts of this case. (See *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].)

#### 2.  *The Statute and the Parties' Contentions*

SJWC contends that it is immune from liability for all of Valley's claims in this case pursuant to section 774 of the Public Utilities Code.[4] Section 774 provides: "No water corporation which has undertaken to provide fire protection service, nor any employee of such corporation acting in the course and scope of his employment, shall be liable for any death or injury to a person or damage to or loss of property resulting from a *failure to provide or maintain an adequate water supply or pressure, or any equipment or other fire protection facility or service*; provided, that such immunity from liability shall not exceed that of a public agency or any of its employees, as the case may be, under similar circumstances. Nothing in this section shall

---

[4]All further references to section 774 are to section 774 of the Public Utilities Code.

preclude the enforcement of any rule, regulation, or order of the commission." (Italics added.)

The parties have cited no published decision interpreting section 774, which was enacted in 1972.[5] SJWC and Valley dispute the statute's meaning and its application to this case.

Initially, the parties agree that section 774, establishing immunity for water corporations such as SJWC, must be read in conjunction with three Government Code sections (850, 850.2 & 850.4) which define immunity for *public entities*.[6] To understand the parties' arguments, it is helpful to set forth these statutes at the outset. Section 850 provides: "Neither a public entity nor a public employee is liable for failure to establish a fire department or otherwise to provide fire protection service." Section 850.2 provides: "Neither a public entity that has undertaken to provide fire protection service, nor an employee of such a public entity, is liable for any injury resulting from the *failure to provide or maintain sufficient personnel, equipment or other fire protection facilities*." (Italics added.) Finally, section 850.4 provides as follows: "Neither a public entity, nor a public employee acting in the scope of his employment, is liable for any injury resulting from the *condition of fire protection or firefighting equipment or facilities* or, except as provided in Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code, for any injury caused in fighting fires." (Italics added.)

Generally, the parties' contentions may be characterized as follows. First, the parties dispute the meaning of section 774's immunity for failure to "maintain" fire protection equipment. SJWC argues that it is not liable for damage caused by a failure to keep fire protection equipment in good repair ("maintain" it), while Valley argues that section 774 only protects water corporations from damages arising as a result of a decision to stop providing (i.e., fail to "maintain") fire protection equipment or facilities. Second, the parties disagree regarding how section 774 relates to sections 850.2 and 850.4: SJWC argues that section 774 was a synthesis of the Government Code immunities and was intended to include the immunities provided by *both* sections 850.2 and 850.4, while Valley argues that section 774 is coextensive with section 850.2 but does *not* include section 850.4's immunity for damages caused by the "condition" of fire protection equipment.

---

[5]Section 774 was mentioned in a footnote in *Stuart* v. *Crestview Mut. Water Co.* (1973) 34 Cal.App.3d 802, 806-807, footnote 5 [110 Cal.Rptr. 543], but the court did not interpret or apply section 774 in that case.

[6]All further references to sections 850, 850.2 and 850.4 are to those sections of the Government Code.

Finally, the parties also dispute whether section 774 immunity applies in a case (such as this one) where the damage was not caused by fire or during firefighting. SJWC contends that section 774 includes immunity for the water damage here, while Valley contends that it does not. Each party argues that its interpretation of section 774 is supported by the statute's language, legislative history, and policy considerations.

### 3. *Statutory Language*

The fundamental purpose of statutory construction is to ascertain the Legislature's intent in order to effectuate the purpose of the law. In determining this intent, courts look first to the words contained in the statute, giving them their usual and ordinary meaning. (*People* v. *Hull* (1991) 1 Cal.4th 266, 271 [2 Cal.Rptr.2d 526, 820 P.2d 1036].) "If the language is clear, the statute must be enforced according to its terms." (*AFL-CIO* v. *Deukmejian* (1989) 212 Cal.App.3d 425, 433 [260 Cal.Rptr. 479].)

The critical semantic question here involves the meaning of the word "maintain" in section 774. Valley argues that because both sections 774 and 850.2 provide immunity for injury resulting from "failure to provide or maintain . . . equipment" while section 850.4 provides immunity for injury resulting from "the condition of . . . equipment," section 774 could not have been intended to protect against liability for failure to maintain the *condition* of fire protection equipment. According to Valley, if the Legislature had intended section 774 to provide immunity for damage resulting from the condition of equipment, it would have made this clear, just as it did in section 850.4. Instead, the Legislature conspicuously omitted the critical word "condition" from section 774. Valley contends that this omission demonstrates the Legislature's intent to limit the scope of a water corporation's immunity to the immunity of section 850.2 (which does *not* include immunity for damage resulting from the condition of pipes) rather than the broader "condition" immunity of section 850.4. Valley thus argues that in section 774 (as in section 850.2) the verb "maintain" must be interpreted to mean a failure to *continue to provide* adequate pressure or firefighting equipment.

Valley also contends that section 774's first sentence (immunity for damage resulting from a "failure to provide or maintain an adequate water supply or pressure, or any equipment or fire protection facility or service . . .") requires this construction. Valley argues: "In context, 'provide or maintain an adequate water supply or pressure' refers to making available ('provide') and keeping available ('maintain') adequate water to fight fires. The same interpretation necessarily applies to the remainder of the sentence:

making and keeping available 'any equipment or other fire protection facility or service.' The meaning of 'maintain' cannot change in mid-sentence."

We are not persuaded by these arguments regarding the statutory language. First, the word "maintain" is defined as "to keep in an existing state or condition" as well as to "continue." (See, e.g., Webster's New Internat. Dict. (3d ed. 1981) p. 1362 [including "to keep in a state of repair, efficiency, or validity; preserve from failure or decline"]; Black's Law Dict. (6th ed. 1990) p. 953, col. 2 [including "keep in good order; keep in proper condition; keep in repair; keep up"].) Valley's argument that "maintain" means exclusively "continue to provide" requires, in our opinion, an unnatural and extremely restrictive definition of the word "maintain."

Second, although one might "maintain" adequate water supply or pressure in a slightly different manner than one "maintains" equipment by keeping it in repair, we are convinced that both meanings of "maintain" are compatible in the same sentence. In fact, it may be necessary to keep equipment or pipes in *repair* in order to continue to *provide* adequate water pressure.

Although we find Valley's semantic arguments unpersuasive, the statutory language of section 774, especially as it relates to sections 850.2 and 850.4, is not free from uncertainty. Given the parties' competing meanings for the same statutory language, the lack of judicial interpretation of section 774, the fact that section 774 was enacted with sections 850.2 and 850.4 already in effect, and our role in ascertaining and effectuating legislative intent, we conclude that it is appropriate to look to legislative history in order to assist in the interpretation of section 774. (See *Laurel Heights Improvement Assn. v. Regents of University of California* (1993) 6 Cal.4th 1112, 1127 [26 Cal.Rptr.2d 231, 864 P.2d 502].)

4. *Legislative History*

Sections 850, 850.2 and 850.4 were enacted in 1963 to reinstate and create certain immunities for public entities, in response to *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], which had generally eliminated sovereign immunity. The Legislature recognized that public entities provided certain essential services for which they should not shoulder the expense of tort liability, and expressly provided public entities with immunity in these areas. (4 Cal. Law Revision Com. Rep. (Jan. 1963) pp. 827-829; see *Heieck and Moran* v. *City of Modesto* (1966) 64 Cal.2d 229, 233, fn. 3 [49 Cal.Rptr. 377, 411 P.2d 105].)

Section 774 was enacted in 1972 to provide certain immunity for water corporations providing fire protection services. Although the initial version

of the bill (Sen. Bill No. 780) did not refer to public agencies, the following language was added to the final version of the statute: "provided, that such immunity from liability shall not exceed that of a public agency or any of its employees, as the case may be, under similar circumstances." (§ 774.)

When the bill was amended, the Legislative Counsel's Digest summarizing the bill was amended to state that *"no water corporation* or employee providing fire protection service *shall have any greater liability* as a result of failure to maintain water supply, pressure or any equipment, or other fire protection facility or service *than a public agency* or its employees under similar circumstances." (Italics added.) (See *Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713 [63 Cal.Rptr. 439] [utilizing Legislative Counsel's Digest of bill in construing statute].)

Legislative committee reports on the bill also indicate that the bill was intended to provide water companies with the same immunity as public entities. An analysis by the Assembly Committee on Commerce and Public Utilities states that the prior year, the Public Utilities Commission was directed to investigate the possibility of requiring privately owned water companies to provide fire protection services. The analysis states, in part: "The prospect of being forced by the PUC to provide fire protection services led the privately owned water companies to have this bill introduced. The bill would give them the *same immunity* from liability that public fire protection services have." (Italics added.)

The Senate Committee on Public Utilities and Corporations' analysis of the bill noted that the Public Utilities Commission was "establishing standards that will affect line pressures, storage system capacity, water main size, and total water supplies" and that the standards "should be issued before the end of the year." Noting that "[p]resent law exempts publicly owned water utilities from liability for fire protection failures (Sec. 850, 850.2 and 850.4 of the Government Code)," the analysis stated that the Public Utilities Commission supported Senate Bill No. 780 "on the grounds that it is equitable for the private water companies to be *on a parity* with the publicly owned utilities." These legislative committee reports are appropriate for consideration in construing a statute. (See, e.g., *Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465 & fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].)

The legislative history of section 774 also includes an 11-page memorandum by the California Water Association (CWA). The parties apparently agree that it is appropriate to consider this memorandum as legislative history in construing section 774, but reach different conclusions regarding

its content. We agree that consideration of the CWA memorandum is appropriate. (See, e.g., *Woodman* v. *Superior Court* (1987) 196 Cal.App.3d 407, 414 [241 Cal.Rptr. 818], disapproved on other grounds, *People* v. *Hull* (1991) 1 Cal.4th 266, 276 [2 Cal.Rptr.2d 526, 820 P.2d 1036] [memorandum by State Bar subcommittee, which was "driving force" behind revision, was appropriate legislative history in construing statute].) After reviewing the CWA memorandum, we conclude that it supports SJWC's position that section 774 includes the immunity provided by both sections 850.2 and 850.4.

The CWA memorandum notes that under the case law at that time, private water utilities and public entities had the same immunity. The memorandum states: "In the cases cited, no distinction has been made between the extent and quality of the immunity from liability of water companies and that of municipalities in matters of fire protection. If anything, the cases involving the immunity of municipalities have rested upon those holding water companies to be free from liability. . . . [¶] No distinction has heretofore been made between the two types of water service agencies [public and private] in the past. As the *language of S.B. 780 is intended to restate the purposes of Government Code §§ 850.2 and 850.4* (with only such changes as may be necessary to reflect the nature of water company operations), there is no reason to believe the present consistency of interpretation of these exemptions from liability would be impaired." (Italics added.)

Other portions of the CWA memorandum also indicate that the CWA believed the bill would grant privately owned water utilities the same immunity as their municipally owned counterparts: "As water companies and municipalities have received a parity of treatment under the case decisions cited above, the water companies concluded that as such immunity had been codified as to the municipalities by Government Code §§ 850.2 and 850.4, similar legislation should be sought for application to them when they were undertaking to provide fire protection service." From these statements and the remainder of the CWA memorandum, we conclude that the CWA specifically requested the same immunity for water corporations as the Government Code (§§ 850.2 & 850.4) had conferred on public entities.[7]

The Legislative Counsel's Digest, legislative committee reports and CWA memorandum persuade us that the legislative history supports SJWC's

---

[7]The parties have also cited a decision of the Public Utilities Commission which summarized the position of the CWA. (P.U.C. Dec. No. 79561 (1972) 73 Cal.P.U.C. 7.) That decision states, in part: "The California Water Association and the respondent water corporations which participated in the proceeding recommend that the Commission report to the Legislature that it appears desirable and in the public interest that public utility corporations be granted immunity from liability for *failure to provide* adequate fire protection service *similar to* the immunity now provided to public water service agencies pursuant to Sections *850, 850.2 and 850.4* of the Government Code . . . ." (73 Cal.P.U.C. at p. 10, italics added.)

argument that the Legislature intended to confer the same immunity on water corporations regarding fire protection equipment as that provided to public entities by sections 850, 850.2 and 850.4.

In addition, in examining the language of section 774 and the related Government Code sections, we note that the construction proposed by Valley (with immunity for failure to "provide" or keep fire protection facilities in existence, but not for failure to keep them in good "condition" or repair) would present serious practical difficulties. For example, if a closed valve were to prevent water from getting to a fire, liability would depend upon whether this was considered a failure to have the water "provided," (resulting in immunity) or a failure to have the pipe in good "condition" (resulting in liability).

In fact, courts interpreting the Government Code sections have avoided drawing a distinction between "maintaining" equipment and keeping it in good "condition." For example, in *Heieck and Moran* v. *City of Modesto*, *supra*, 64 Cal.2d 229, no water was available to extinguish a fire because a water valve had been closed. The court stated: "[W]hether the alleged injury to plaintiff's premises be viewed as resulting from 'failure to provide or maintain sufficient . . . fire protection facilities' (§ 850.2) or from the closed 'condition' of the water valve (§ 850.4) the conclusion is inescapable that the Legislature intended to establish immunity under the circumstances alleged by plaintiff." (64 Cal.2d at p. 233.) (See also *New Hampshire Ins. Co.* v. *City of Madera* (1983) 144 Cal.App.3d 298, 304-305 [192 Cal.Rptr. 548] [closed water valve prevented water from being available to suppress a fire; court stated that liability was "precluded under both section 850.2 (failure to provide or maintain sufficient fire protection facilities) and section 850.4 (relating to the condition of the fire protection or firefighting equipment and facilities)"]; *Lainer Investments* v. *Department of Water & Power* (1985) 170 Cal.App.3d 1, 8-9 [215 Cal.Rptr. 812] [immunity under both §§ 850.2 and 850.4 applied when partially closed valve resulted in insufficient water for firefighting].) As these decisions illustrate, Valley's attempt to distinguish between "provide and maintain" and "condition" immunities would often be difficult to apply.

After considering the usual and ordinary meaning of "maintain," the legislative history of section 774, and the difficulties with Valley's proposed

---

In this excerpt, Valley emphasizes the phrase "failure to provide," while SJWC emphasizes that CWA specifically requested immunity "similar" to that provided by all three Government Code sections, including section 850.4. As explained above, we are persuaded that the immunity requested by the CWA did include section 850.4's immunity for damages resulting from the condition of fire protection equipment.

construction, we construe section 774 to include immunity for damages or injuries resulting from the "maintenance" of fire protection equipment or facilities, in the sense of the proper construction and repair of such equipment or facilities.

### 5. *Immunity for Water Damage*

■ Valley also contends that section 774 immunity does not extend to "damage which is not fire-related," such as the water damage in this case. The parties have cited no case discussing the types of damages covered by section 774.

A similar issue arose under section 850.4 in *Razeto v. City of Oakland* (1979) 88 Cal.App.3d 349 [151 Cal.Rptr. 791]. In *Razeto*, plaintiffs alleged that property damage resulted from the negligent installation and maintenance of a fire hydrant. Vandals allegedly opened a fire hydrant when there was no fire, and water from the hydrant damaged plaintiffs' house and its contents. The trial court granted summary judgment in favor of the city and public utility district, and the appellate court affirmed. The court examined the legislative history of section 850.4, and stated: "The comment to [section] 850.4 states in clear terms that immunity is to be provided for dangerous and defective fire protection equipment. [Citation.] [¶] Hence, although there is an inferable contrary intent, the statute is clear and unambiguous. It explicitly provides sovereign immunity for any injury resulting from the 'condition of fire protection or firefighting equipment.' In the face of that clear statutory language we are not at liberty to use a remotely inferable contrary legislative intention to show that a different meaning should be given to the statute." (88 Cal.App.3d at pp. 352-353.) The court thus held that section 850.4 provides immunity from claims involving dangerous or defective fire protection equipment, even when the equipment causes property damage while not in use fighting fires.

Valley argues, in essence, (1) that section 774 "does not mention *non-fire* liability, much less clearly provide immunity for *non-fire* liability," (2) that *Razeto* was incorrectly decided and construes only section 850.4, which was not incorporated into section 774; (3) that section 774's immunity for *fire* protection is "consistent with the long-standing immunity of private water companies for failure to provide adequate water to fight fires"; and (4) that "both public and private water companies had always been liable for damage caused by leaking pipes."

With regard to whether the language of section 774 provides immunity for "non-fire liability," the statute specifically provides that the immunity extends to "*any* death or injury to a person or damage to or loss of property

resulting from a failure to provide or maintain . . . any equipment or other fire protection facility or service . . . ." This provision (like the section 850.4 provision considered in *Razeto*) expressly includes "any" damages, and contains no limitation to fire-related damages.[8]

We also disagree with Valley's argument that *Razeto v. City of Oakland*, *supra*, 88 Cal.App.3d 349, is unrelated to section 774 and incorrect. As explained above, we have concluded that section 774 includes the section 850.4 immunity for the condition of fire protection equipment. In addition, the *Razeto* court's conclusion that the public entities were not liable for water damage from the fire hydrant followed directly from the statutory language of section 850.4 (providing immunity for "*any injury resulting from the condition* of fire protection or firefighting equipment"). As noted in *Razeto*, this conclusion from the clear statutory language was also consistent with the comment to section 850.4. (88 Cal.App.3d at pp. 352-353, citing 4 Cal. Law Revision Com. Rep., *supra*, p. 861.)

Valley is correct that pre-section-774 cases immunized private water utilities from property damages caused by the negligent failure to provide sufficient water pressure to combat a fire. (See, e.g., *Stuart v. Crestview Mut. Water Co.* (1973) 34 Cal.App.3d 802 [110 Cal.Rptr. 543].) These cases, however, including recent cases concerning public entity immunity under sections 850.2 and 850.4, involved fire-related damages, and did not address the question before us (whether immunity is *limited* to actions for fire damages).[9] These cases simply provide no guidance regarding water damage. They do not support Valley's contention that section 774 immunity is *limited* to fire damage.

It is interesting to note that with regard to the maintenance of fire protection equipment, courts have not limited section 850.4 immunity to

---

[8]We are not persuaded by Valley's argument that this interpretation of section 774 conflicts with *Baldwin v. State of California* (1972) 6 Cal.3d 424, 435-436 [99 Cal.Rptr. 145, 491 P.2d 1121]. *Baldwin*, which did not concern section 774 or section 850.4, called generally for a narrow construction of immunity statutes. Even construing section 774 narrowly as recommended by Valley, we are faced with the statute's clear provision quoted above, providing immunity for "any" death or injury or damage to or loss of property resulting from a failure to provide or maintain any equipment or other fire protection facility or service. Our interpretation is directed by this statutory language, and not by any effort to construe the immunity in a particular manner.

[9](See, e.g., *Ukiah v. Ukiah Water & Imp. Co.* (1904) 142 Cal. 173 [75 P. 773]; *Niehaus Bros. Co. v. Contra Costa Water Co.* (1911) 159 Cal. 305, 312-313 [113 P. 375]; *Heieck and Moran v. City of Modesto, supra*, 64 Cal.2d 229; *Cochran v. Herzog Engraving Co.* (1984) 155 Cal.App.3d 405 [205 Cal.Rptr. 1]; *New Hampshire Ins. Co. v. City of Madera* (1983) 144 Cal.App.3d 298 [192 Cal.Rptr. 548]; *Lainer Investments v. Department of Water & Power* (1985) 170 Cal.App.3d 1 [215 Cal.Rptr. 812].)

activities *during* firefighting. In at least two cases since *Razeto*, courts have applied section 850.4's immunity regarding fire protection equipment where the alleged negligence occurred *prior to* a fire.[10] These cases, unlike *Razeto*, were not required to consider whether immunity applies to damages caused by the equipment alone, in the absence of a fire.

Valley also contends that both public and private water utilities had always been liable for damage caused by leaking pipes, citing *Juchert* v. *California Water Service Co.* (1940) 16 Cal.2d 500 [106 P.2d 886] and *Buffums'* v. *City of Long Beach* (1931) 111 Cal.App. 327 [295 P. 540]. These cases, however, do not discuss fire protection pipes. They appear to have involved regular water pipes, supplying water for ordinary purposes. (16 Cal.2d at p. 505; 111 Cal.App. at p. 328 [water main "through which it distributed water to its consumers"].) They do not address the issue before us regarding damages caused by fire service pipes.

Here, in light of the statutory language of section 774 (no liability "for *any* death or injury to a person or *damage to or loss of property*"), and the interpretation of the comparable provision in section 850.4, we conclude that section 774 provides immunity from damages resulting from a failure to maintain (or keep in good repair) fire protection facilities or equipment, even where those damages arise from the fire protection equipment itself and not in connection with a fire.

As a policy matter, this result is consistent with the symmetry of treatment between public entities and water corporations providing water for fire protection intended by the Legislature when it enacted section 774. It is logical for these public and private entities, extensively regulated and providing the same service, to be provided the same immunity. We are not persuaded that a contrary result, increasing potential liability every time fire protection service is increased, would be beneficial.

### 6. *Valley's Claims*

Because section 774 confers immunity on water corporations such as SJWC for the condition of fire protection equipment (such as the pipe at

---

[10](See *New Hampshire Ins. Co.* v. *City of Madera, supra*, 144 Cal.App.3d at p. 305 [where city personnel closed a valve in the city's water delivery system and failed to reopen it before a fire started, the court held that the valve constituted part of the city's "fire protection 'facilities'" and the city was immune pursuant to §§ 850.2 and 850.4]; *Cochran* v. *Herzog Engraving Co., supra*, 155 Cal.App.3d at p. 413 [plaintiffs alleged that the fire department knew that a highly combustible substance was in use at an engraving company and took no remedial action; plaintiffs' claims were within the scope of the immunity provided by §§ 850.2 and 850.4].)

issue here), SJWC is immune from Valley's claims. SJWC is immune from claims for damages resulting from its alleged negligence in repairing the pipe and installing connectors to it, and in failing to further inspect, repair or replace the pipe. (See, e.g., *Razeto* v. *City of Oakland, supra,* 88 Cal.App.3d 349, 351 [immunity applied to plaintiff's cause of action for "negligent installation and maintenance of a fire hydrant"]; *Cochran* v. *Herzog Engraving Co., supra,* 155 Cal.App.3d at pp. 411-412 [immunity applied to claims that city was negligent in inspecting, correcting or remedying hazardous conditions].) SJWC is also immune from liability with regard to Valley's trespass claim, which is based upon the identical facts and evidence supporting its negligence claim.

Because we find the immunity issue dispositive, we need not address SJWC's other contentions on appeal.

### III.  DISPOSITION

The judgment is reversed with directions that judgment be entered for SJWC. SJWC is awarded costs on appeal.

Premo, J., and Wunderlich, J., concurred.

A petition for a rehearing was denied October 24, 1997, and respondents' petition for review by the Supreme Court was denied January 14, 1998.