Filed 9/2/25 ZRP Group v. City of Long Beach CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| ZRP GROUP LLC, | B338773 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV11375) |
| v. | |
| CITY OF LONG BEACH, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark C. Kim, Judge.  Affirmed.

Law Office of James B. Abeltin and James B. Abeltin for Plaintiff and Appellant.

Long Beach City Attorney, Dawn A. McIntosh, City Attorney, Matthew M. Peters, Deputy City Attorney for Defendants and Respondents.

\* \* \* \* \* \*

Sami Khemiri (Khemiri), an employee of the City of Long Beach (City), checked and exercised a control valve on a water line servicing a building leased by ZRP Group LLC (ZRP Group), which is in the cannabis cultivation, manufacturing, and distribution business. Because the building's fire sprinkler pipes had been cut and left uncapped, water escaped and flooded ZRP Group's marijuana crop. ZRP Group asserted causes of action for breach of mandatory duties and negligence. The trial court granted a defense motion for summary judgment, finding that the City and Khemiri had no mandatory duties under the circumstances, and that Khemiri had immunity under Government Code sections 850.2 and 850.4. We affirm the judgment in favor of the City and Khemiri.

## FACTUAL BACKGROUND

Beginning in April 2018, ZRP Group operated a cannabis business at a commercial property located at 2156 West Gaylord Street in Long Beach, California (2156 Gaylord). ZRP Group's business consisted of indoor cultivation, manufacturing, and distribution of recreational and medical cannabis. During the relevant time period, ZRP Group leased 2156 Gaylord from the owner, the Van Camp Family Trust.

On April 10, 2018, when the lease term commenced, the interior of 2156 Gaylord primarily consisted of a large open warehouse space with an exposed ceiling. Between April 2018 and the summer of 2019, ZRP Group worked on the building to support its cannabis business. ZRP Group hired plumbing contractors to install numerous sinks and run irrigation lines throughout its facility. ZRP Group also installed air conditioner and electrical systems. At some point, ZRP Group's fire sprinkler pipes were cut and left uncapped in several locations throughout

2

the building.[1]

Long Beach Acquisitions LLC owns the neighboring property, located at 2164 West Gaylord Street in Long Beach, California (2164 Gaylord). 2164 Gaylord is a commercial warehouse building, which appeared to be vacant or abandoned during the relevant time period.

Both 2156 Gaylord and 2164 Gaylord are equipped with automatic fire sprinkler systems. Each building's fire sprinkler piping is supplied from the same fire sprinkler riser, which is located on the exterior of 2164 Gaylord. The fire sprinkler riser connects the buildings' fire sprinkler systems to the City's underground water supply line.

The fire sprinkler riser is equipped with a water control valve, which starts and stops the flow of water through the buildings' fire sprinkler system. There is also a water control valve located at the street level between the domestic water main line and the fireline to the building. The fireline provides water for the building's fire suppression system.

On October 30, 2018, the Water Department received a call from Karen Van Camp, who requested that the fireline to 2156 Gaylord be shut off for approximately two weeks because of work

---

[1] The parties dispute when this occurred and who was responsible. The City and Khemiri argue that the pipes were cut between March 29, 2018, and June 29, 2021, when ZRP Group occupied the building and was doing construction work. ZRP Group argues that the pipes were cut before it occupied the building, though it does not explain how this is possible, since water would have been pouring from the severed and uncapped pipes before the water control valve was closed. This factual dispute is not relevant to the issues on appeal.

within the building.[2]  The next day, Dwayne McGee (McGee), a Water Department employee, went to 2156 Gaylord and located the City's water control valve.  McGee turned the valve from its open position to a closed position.  On or after November 7, 2018, McGee returned to 2156 Gaylord and verified that the valve was closed.  McGee did not return to reopen the valve.

On or about March 8, 2019, Vincent Olea (Olea), a Cannabis Plan Checker and Fire Inspector for the City, reviewed proposed construction and building plans for 2156 Gaylord.  Olea conducted inspections of the building and identified certain deficiencies.  ZRP Group corrected these deficiencies, and Olea issued a final Fire Department approval following his inspection on July 2, 2019.  According to Olea, he was not aware the building was equipped with a fire sprinkler system.  The parties dispute whether the City or ZRP Group was responsible for his lack of knowledge.

Almost three years later, on June 29, 2021, Khemiri was checking and exercising water control valves in his assigned district, which included 2156 Gaylord and 2164 Gaylord.  A valve exercise is a process by which the valve is rotated to ensure that it operates correctly.  Valve exercises are conducted periodically to prevent valves from becoming stiff and non-functional.  Valves that are left in a static position for long periods of time may corrode or become blocked with mineral deposits.

Khemiri used his City-issued laptop computer to access

_____

[2] Karen Van Camp did not remember having made such a call.  However, she testified that any request to disconnect service necessarily would have related to the fireline, because there was no other water going to the building at that time.

4

InfraMAP, a program that provides information on municipal valves, such as valve size, type of valve, installation date, turn count, last position, and date of last operation. The InfraMap program indicated that the City's valve was last exercised in October 2018 and was closed in November 2018.

Khemiri rotated the valve to the fireline using a mechanical device called a "Wachs machine." Upon doing so, Khemiri realized that the valve was opening because he heard water flow through the valve. Khemiri closed the valve and made a notation in the InfraMAP program. During the time the valve was open, water traveled through the riser and into the fire sprinkler system at 2156 Gaylord. Because multiple pipes in ZRP Group's fire sprinkler system had been cut and left uncapped, water escaped from those areas and flooded ZRP Group's marijuana crop.

## PROCEDURAL HISTORY

ZRP Group filed a complaint asserting two causes of action.[3] ZRP Group asserted the first cause of action, breach of mandatory duties under Government Code section 815.6, against the City and Khemiri, citing regulations from the Public Safety Code and the California Building Standards Code. ZRP Group asserted the second cause of action, negligence, against Khemiri, per Government Code section 820.4.[4]

---

[3] Falls Lake National Insurance Company as subrogee of ZRP Group filed its own complaint against the City and Khemiri but dismissed the complaint with prejudice.

[4] We presume ZRP Group intended to proceed under Government Code section 820, which provides that "a public employee is liable for injury caused by his act or omission to the same extent as a private person." (Gov. Code, § 820, subd. (a).)

The City and Khemiri moved for summary judgment or, in the alternative, for summary adjudication. The trial court held a hearing on February 22, 2024. Following the hearing, the trial court granted summary adjudication of the first cause of action, finding that the cited regulations impose "no mandatory duty regarding the water valve and fire extinguishing system."[5] The trial court continued the hearing on the second cause of action and ordered supplemental briefing on the issue of whether Government Code sections 850.2 and 850.4 afford immunity under these circumstances. The trial court held a further hearing on March 14, 2024, and granted summary adjudication of the second cause of action on this basis. The trial court entered judgment for the City and Khemiri on March 22, 2024. ZRP Group timely appealed. (Code Civ. Proc., §§ 437c, subd. (m)(1), 904.1, subd. (a)(1).)

## DISCUSSION

### I.      Standard of Review

A motion for summary judgment must be granted if no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (*Id.*, § 437c, subd. (c).) We independently examine the record to determine if triable issues exist. (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64.) Evidence presented in opposition to summary judgment is liberally construed. (*Regents of University of*

---

[5] Prior to the hearing, the trial court posted a tentative order granting the motion for summary judgment in its entirety. This tentative order is not part of the record. The parties prepared a proposed order after the hearing, which the trial court signed.

*California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

## II. The Cited Regulations Impose no Mandatory Duties on the City and its Employees

ZRP Group's first cause of action alleges that the City and Khemiri failed to discharge mandatory duties, which are purportedly found in Title 19 of the California Code of Regulations, Division 1, Chapter 5, section 901 et seq.[6] The elements of liability under Government Code section 815.6 are as follows: (1) The enactment must impose a mandatory duty on the public entity, i.e., one that " 'affirmatively imposes the duty and provides implementing guidelines;' " (2) The mandatory duty must be intended to protect against the specific injury at issue; and (3) The breach of the mandatory duty must be the proximate cause of the plaintiff's injury. (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898, citations omitted.)

ZRP Group relies on section 904.2, which outlines certain testing and maintenance requirements. ZRP Group argues that the City and Khemiri were required to follow section 904.2, subdivision (h), which states: "At the time of testing and maintenance, building management shall be consulted to avoid unnecessary disturbance of normal business operation."

We agree with the trial court that section 904.2, subdivision (h) imposes no mandatory duties on the City and its employees under these circumstances. As an initial matter, section 904.2 only applies to those who inspect, test, and maintain automatic fire extinguishing systems upon the request of building owners and occupants. This is clear because the

---

[6] All references in this section shall be to Title 19 of the California Code of Regulations, Division 1, Chapter 5, unless otherwise indicated.

7

regulation requires all work to be performed by those licensed under Health and Safety Code section 13196.5 (licensees) but permits "the building owner or occupant" to conduct its own testing and maintenance under certain circumstances in lieu of hiring a licensee. (§ 904.2, subd. (a)(3).)

Similarly, other subsections expressly apply to licensees and govern their obligations to "customers," which are building or system owners. Section 904.2, subdivision (k) requires the contractor to provide "[a]n initial written estimate for the cost of repair . . . to the customer before performing any repairs." (§ 904.2, subd. (k).) This subsection also prohibits the contractor from charging for work or parts "in excess of the estimate without the previous consent of the customer," and requires the contractor to "advise the customer in writing of the amount of the fee." (*Ibid.*) Section 904.2, subdivision (j) requires the contractor "to provide a written report of the test and maintenance results to the building owner . . . ." (§ 904.2, subd. (j).) Section 904.2, subdivision (f) requires the contractor "to return all replaced parts to the system owner or owners [sic] representative, except those parts that are required to be returned to the manufacturer under conditions of warranty." (§ 904.2, subd. (f).) Section 904.2, subdivision (e) requires the contractor to provide "an itemized invoice showing work performed and parts replaced . . . to the system owner." (§ 904.2, subd. (e).) Accordingly, we interpret section 904.2, subdivision (h) as imposing duties on licensees who test automatic fire extinguishing systems for building owners and occupants, not city workers performing routine caretaking functions in the course of their official duties. Our interpretation is also supported by the purpose of section 904.2, subdivision (h), which is to prepare building management for the potential

8

consequences of activating the fire alarm, e.g., fire doors close, air conditioning systems terminate, elevators are recalled, and the evacuation alarm is activated.

Moreover, even assuming the water control valve is an "automatic fire extinguishing system," Khemiri was not performing the required "testing" under the regulations. The regulations make clear that "testing" is conducted in accordance with the National Fire Protection Association (NFPA) standards. (§ 904.2, subd. (d); see also § 904.) This process requires, among other things: (1) Performing a "2-inch drain test;" (2) A waterflow alarm test; (3) Confirming with the monitoring company that it received the waterflow alarm(s); (4) Closing and opening the fire sprinkler control valve on the fire sprinkler riser; and (5) Inspecting the fire sprinkler piping for signs of damage or related issues. Alarm tests and the signaling equipment test are expressly referenced in section 904.2 and Health and Safety Code section 13195, respectively.

These were not the tasks performed by Khemiri, who is a water utility mechanic for the Water Department. Rather, Khemiri's role was to check and exercise water control valves in his assigned district to ensure that they functioned correctly and did not become stiff or non-functional due to corrosion or mineral deposits.[7] ZRP Group identifies no authority suggesting that this work constitutes "testing" within the meaning of section 904.2.

ZRP Group argues that the trial court erroneously found that section 904.2 does not apply to public entities,

---

[7] There is no dispute that Khemiri exercised the water control valve at the street level, not the valve on the fire sprinkler riser.

9

notwithstanding the regulation's reference to "fire departments." ZRP Group misinterprets the record. Although the City and Khemiri argued on summary judgment that the regulation is not directed at public entities, the trial court did not expressly adopt this argument. The trial court merely found that the City and Khemiri had no mandatory duties based upon the undisputed facts of this case. Section 904.2 may apply to public entities, like fire departments, but only when they perform inspections, testing, and maintenance of automatic fire extinguishing systems for building owners and occupants. As discussed, Khemiri was not performing these duties when he exercised the water control valve.[8]

In the alternative, ZRP Group argues that the California Code of Regulations, Title 24, Part 5, Chapter 1, section 105.3.1 imposes a mandatory duty upon the City and its employees.[9] This section, titled "Defective Systems," states: "An air test shall be used in testing the sanitary condition of the drainage or plumbing system of building premises where there is reason to believe that it has become defective. In buildings or premises condemned by the Authority Having Jurisdiction because of an insanitary condition of the plumbing system, or part thereof, the alterations in such system shall be in accordance with the requirements of this code." (Cal. Code Regs., tit. 24, § 105.3.1.)

---

[8] ZRP Group forfeits its argument that section 904.2, subdivision (h) required the City and Khemiri to contact the local fire authority prior to exercising the valve. Regardless, that argument would be unsuccessful for the reasons discussed.

[9] ZRP Group concedes that the California Code of Regulations, Title 24, Part 5, Chapter 1, section 105.3 does not apply to this case.

10

ZRP Group forfeits this issue by failing to raise it in the opening brief, instead raising it for the first time in the reply brief. (*See Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 982.) Regardless, on its face, this regulation only governs testing to verify the sanitary condition of a drainage or plumbing system. "If its words, given their usual and ordinary meaning, are clear and unambiguous, we presume the adopting authority meant what it said and the plain language of the regulation applies." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2003) 109 Cal.App.4th 1687, 1696.)

Based upon the foregoing, we find that the City and its employees are not required to consult with property managers or owners or conduct air tests before exercising water control valves. Therefore, we affirm the judgment on the first cause of action.

### III. Khemiri Has Immunity Under Government Code Section 850.4

ZRP Group's second cause of action alleges that Khemiri was negligent because he did not investigate the reason the water control valve was closed, contact his supervisor or the City's fire department, or rotate the valve slowly by hand so he could better control the water flow. ZRP Group also argues that the City conducted numerous inspections of the premises and did not raise concerns about the severed and uncapped pipes.

Except as otherwise provided by statute, public employees are liable for injuries caused by acts or omissions to the same extent as private persons. (Gov. Code, § 820.) However, Government Code section 850.4 provides as follows: "Neither a public entity, nor a public employee acting in the scope of his employment, is liable for any injury resulting from the condition

11

of fire protection or firefighting equipment or facilities or, except as provided in Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code, for any injury caused in fighting fires." (Gov. Code, § 850.4.) Immunity under Government Code section 850.4 operates as an affirmative defense to liability. (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 802.) The trial court found that Khemiri was immune under Government Code section 850.4, as well as section 850.2.[10]

We agree that Khemiri is entitled to immunity under Government Code section 850.4. The California Supreme Court has interpreted this section as immunizing cities and their employees for liability from having rotated a water control valve in the course of their official duties. In *Heieck & Moran v. City of Modesto* (1966) 64 Cal.2d 229 (*Heieck & Moran*), city employees closed a valve in order to relocate certain water mains, but they did not reopen the valve after the project was completed. (*Id.* at pp. 230–231.) Subsequently, there was a fire, and there was no water in the fire hydrants due to the closed valve. (*Ibid.*) The fire spread and damaged the plaintiff's property. (*Ibid.*) The California Supreme Court found immunity under Government Code section 850.4: "The complaint in the present case alleges that city employees while acting in the scope of their employment closed a water valve ***and left it closed***. Thus whether the

---

[10] Government Code section 850.2 states: "Neither a public entity that has undertaken to provide fire protection service, nor an employee of such a public entity, is liable for any injury resulting from the failure to provide or maintain sufficient personnel, equipment or other fire protection facilities." (Gov. Code, § 850.2.)

alleged injury to plaintiff's premises be viewed as resulting from 'failure to provide or maintain sufficient . . . fire protection facilities' (§ 850.2), *or from the closed 'condition' of the water valve (§ 850.4)* the conclusion is inescapable that the Legislature intended to establish immunity under the circumstances alleged by plaintiff." (*Id.* at p. 233, emphasis added.) Accordingly, a water control valve is a component of "fire protection or firefighting equipment," and the position of the valve is a "condition," for purposes of Government Code section 850.4. Subsequent cases have adopted this interpretation. (See *Lainer Investments v. Department of Water & Power* (1985) 170 Cal.App.3d 1; *New Hampshire Insurance Co. v. City of Madera* (1983) 144 Cal.App.3d 298, 302–307 (*New Hampshire Ins.*).) There is no dispute in the instant case that Khemiri exercised the valve as part of his official duties. Therefore, he is entitled to immunity under Government Code section 850.4.

ZRP Group attempts to distinguish these cases by arguing that they involved closed or partially closed valves, which rendered firefighting equipment insufficient or faulty within the intended meaning of Government Code section 850.4. Conversely, ZRP Group argues: "In the case at hand, the condition of the City water valve did not cause the flood of appellant's business. There was nothing wrong with the valve. It held back water when it was closed. It rotated when Mr. Khemiri exercised it." In fact, there was nothing wrong with the valves in *Heieck & Moran* and its progeny, because they also held back water when closed. Regardless, ZRP Group raises a distinction without a difference, given the California Supreme Court's decision to treat water control valves as part of "firefighting equipment," and the position of the valve as a "condition," under

13

Government Code section 850.4.  It matters not that ZRP Group suffered water damage as opposed to fire damage, because Government Code section 850.4 encompasses both forms of damage.  (See *Razeto v. City of Oakland* (1979) 88 Cal.App.3d 349, 351–352; see also *Valley Title Co. v. San Jose Water Co.* (1997) 57 Cal.App.4th 1490, 1502–1505.)  At heart, ZRP Group advocates for immunity under Government Code section 850.4 when city employees close a water control valve, creating the "dry" condition of a fire extinguishing system resulting in fire damage, but not when city employees open a valve, creating the "wet" condition of a fire extinguishing system resulting in water damage.  Such an interpretation of the statute would lead to inconsistent and illogical results.

ZRP Group argues that immunity under Government Code section 850.4 should be limited to damages from "fighting fires," citing *Potter v. City of Oceanside* (1981) 114 Cal.App.3d 564.  In *Potter*, the plaintiff was operating a trenching machine which broke a natural gas line, causing gas to escape.  (*Id*. at p. 565.)  A fire captain negligently instructed the plaintiff to start the trenching machine and move it from the area.  (*Ibid*.)  When the plaintiff started the machine, the escaping natural gas ignited and exploded, injuring the plaintiff.  (*Ibid*.)  The trial court sustained a demurrer, finding immunity under Government Code section 850.4, and the Court of Appeal reversed the judgment because there was no allegation that the fire captain was fighting a fire.  (*Id*. at p. 566.)  As the trial court correctly noted, *Potter* implicated the second prong of Government Code section 850.4, which affords immunity "for any injury caused in fighting fires." (Gov. Code, § 850.4)  We decide the instant case under the first prong of the statute, which affords immunity for "any injury

14

resulting from the condition of fire protection or firefighting equipment or facilities." (*Ibid.*)

ZRP Group further argues that the trial court erred in finding immunity under Government Code section 850.4 because it relied on "a fact that neither side had proved." In ruling on the motion for summary judgment, the trial court noted: "The issue on this motion comes down to whether Khemiri's actions on the date of the incident constituted maintenance of fire protection equipment, in which case immunity under §850.4 would apply." The trial court then found that Khemiri established he was "engaged in maintenance relating to fire protection when the incident occurred" and granted the motion. On appeal, ZRP Group argues that this finding was erroneous because the defense consistently argued Khemiri was **not** performing maintenance on the valve. This is not a ground for reversal because Government Code section 850.4 contains no requirement that defendants demonstrate they were performing "maintenance" on the equipment or facilities when the injuries occurred.

We have considered ZRP Group's remaining arguments and find none to be persuasive. Based upon the foregoing, we find that Khemiri is entitled to immunity under Government Code section 850.4 because ZRP Group's damages resulted from the "open" condition of the water control valve, which is part of the City's firefighting equipment.[11] We need not reach Khemiri's

---

[11] ZRP Group concedes that because multiple pipes in its fire sprinkler system had been cut and left uncapped, water escaped from those areas and flooded its marijuana crop. We need not resolve whether this condition of ZRP Group's fire

remaining arguments.

### IV. The Trial Court Properly Granted the Motion Without Permitting ZRP Group to File a First Amended Complaint

In opposing the motion for summary judgment, ZRP Group sought to file a first amended complaint, which would have amended the second cause of action by adding the City as a defendant and changing the basis of liability from Government Code section 820.4 to section 820.  ZRP Group also sought to amend the prayer from seeking a specific amount of damages to damages "according to proof."  The trial court granted summary judgment without addressing this request.

We find no error in the trial court having done so.  ZRP Group did not seek leave to amend by way of noticed motion or ex parte application, as required by Code of Civil Procedure sections 472, subdivision (a) and 473.  Instead, ZRP Group waited until after the City and Khemiri had filed a dispositive motion.  Leave to amend is properly denied where a party has delayed seeking leave to amend without good cause.  (*Hughes v. Farmers Ins. Exchange* (2024) 107 Cal.App.5th 73, 87.)  Regardless, leave to amend should not be granted when the amendment would be futile.  (*Foroudi v. The Aerospace Corp.* (2020) 57 Cal.App.5th 992, 1000–1001.)  None of the proposed amendments would have remedied the fundamental problem with the second cause of action: The City is not liable for injuries resulting from Khemiri's acts and omissions because he is immune from liability.  (See Gov. Code § 815.2, subd. (b).)  Therefore, we find no error.

------

sprinkler system entitles Khemiri to immunity under Government Code section 850.4.

**DISPOSITION**

The judgment is affirmed.  The City and Khemiri are entitled to costs on appeal.

GOORVITCH, J.[*]

We concur:

LUI, P.J.

RICHARDSON, J.

---

[*]  Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17